UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-21089-CV-WILLIAMS

TOA TRADING LLC, *et al.*,

    Plaintiffs,

v.

MULLEN AUTOMOTIVE, INC., *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss for Improper Venue or, in the alternative, Motion to Transfer ("***Motion***"). (DE 11.) Plaintiffs filed a Response in Opposition to the Motion (DE 13), to which Defendants filed a Reply (DE 17). For the reasons set forth below, the Motion is **DENIED**.

    **I.**    **BACKGROUND**

Plaintiffs TOA Trading LLC ("***TOA***") and MunshiBari LLC ("***MunshiBari***" or, together with TOA, "***Plaintiffs***") filed a complaint against Defendants Mullen Automotive, Inc. ("***Mullen Automotive***") and Mullen Technologies, Inc. ("***Mullen Technologies***" or, together with Mullen Automotive, "***Mullen***" or "***Defendants***")[1] on April 8, 2022, alleging breach of contract or, alternatively, unjust enrichment. (DE 1.) Defendants moved to dismiss the Complaint, arguing that the Court does not have personal jurisdiction over

---

[1] Mullen Technologies merged with Net Element, Inc. ("***NETE***")—a Florida-based company—and the companies, together, became Mullen Automotive. (DE 1 at 6; DE 11 at 3.)

them and venue is improper or, alternatively, to transfer venue to the Central District of California. (DE 11.)

Plaintiff TOA is a limited liability company formed in Delaware with its principal place of business in North Miami Beach, Florida. (DE 1 at 3.) TOA's sole member is its owner, Dayan Martinez ("**Mr. Martinez**"), who is a resident of Florida. (*Id.*) Plaintiff MunshiBari is a limited liability company formed in New York with its principal place of business in New York. (*Id.* at 4.) MunshiBari's sole member, Dr. Shaheen Ahmad, resides in New York. (*Id.*) Mullen Technologies is a corporation incorporated and headquartered in California, and Mullen Automotive is a corporation incorporated in Delaware and headquartered in California. (*Id.*; DE 11 at 13.) David Michery ("**Mr. Michery**") is the CEO of Mullen. (DE 1 at 6.)

In May 2020, Plaintiffs introduced Defendants to executives at NETE to discuss a potential "business combination." (*Id.* at 1, 7.) On June 12, 2020, Plaintiff TOA entered into a Finder's Fee Agreement with Defendant Mullen Technologies ("**Agreement**"), where Mullen Technologies agreed to pay TOA and MunshiBari a fee should Mullen Technologies "enter[] into a merger, reverse triangular merger or sale transaction with Net Element, Inc. ("NETE") to acquire all or a portion of the stock and/or all or a portion of the assets of Mullen [Technologies]." (*Id.* at 7–8; DE 1-1.) On November 5, 2021, a merger between NETE and Mullen Technologies closed. (DE 1 at 13.) However, Plaintiffs allege they were never paid a finders' fee as required by the Agreement. (*Id.* at 14.)

Again, the Agreement, which contains a Florida choice-of-law provision, required Defendants to pay Plaintiffs a finders' fee should Mullen Technologies enter into a "business combination" with NETE, a Florida-based company that Defendants learned

about through Plaintiffs. (*Id.* at 7–8; DE 1-1.) Plaintiffs allege that Mullen Technologies sent the Agreement to Florida to be signed by TOA; Mr. Martinez signed the Agreement in Florida; and Mullen Technologies made numerous calls and sent multiple emails to Mr. Martinez in Florida while negotiating the Agreement (and, later on, while attempting to renegotiate the Agreement). (DE 13 at 9.) Ultimately, Plaintiffs claim that, by not paying Plaintiffs the finders' fee, Defendants breached the Agreement in Florida. (*Id.*) This lawsuit ensued.

## II.   MOTION TO DISMISS

### A.  Legal Standard

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint to determine whether the plaintiff has met his burden of establishing a prima facie case of personal jurisdiction. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). If a defendant challenges jurisdiction by submitting affidavits contradicting the complaint's allegations, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *Id.* When the plaintiff's complaint and supporting affidavits and evidence conflict with the defendant's affidavits, the Court construes all reasonable inferences in the plaintiff's favor. *Id.*

Likewise, "[o]n a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). "'The court must accept all allegations of the

complaint as true, unless contradicted by the defendants' affidavits' and draw all reasonable inferences in the plaintiff's favor." *Rangel v. Palms Resort & Casino,* 2015 WL 13680367, at *2 (S.D. Fla. Aug. 14, 2015) (citing *Wai*, 315 F. Supp. 2d at 1268); *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). In considering a Rule 12(b)(3) motion to dismiss, the Court may look beyond the pleadings and consider the "testimonial and documentary evidence submitted by the parties in connection with the Motion to Dismiss, all of which is relevant to the fact-intensive venue issues to be determined." *Wai*, 315 F. Supp. 2d at 1268.

### B. Discussion

#### i. *Motion to Dismiss for Lack of Personal Jurisdiction*

The Court engages in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant. *See Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)); *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 626 (11th Cir. 2010) (citations omitted); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted). First, the Court determines whether the defendant's activities satisfy Florida's long-arm statute. *See Louis Vuitton Malletier*, 736 F.3d at 1350. Second, the Court determines whether the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.* at 1350–51.

1. *Florida's long-arm statute*

Florida's long arm statute allows for two distinct categories of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. Fla. Stat. § 48.193; *Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 WL 712389, at *2 (S.D. Fla. Mar. 7, 2007). A court may exercise general personal jurisdiction when a defendant "is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "On the other hand, specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts relate[] to the plaintiff's cause of action." *Louis Vuitton Malletier*, 736 F.3d at 1352; *Perry Ellis*, 2007 WL 712389, at *2 (citation omitted).

One instance where a non-resident defendant may be subject to specific personal jurisdiction in this state is when the defendant "[b]reach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(a)(7). "Where a contract requires payment and the contract does not state a place of payment . . . the breach occurs where the creditor is domiciled." *New Life Mgmt. Co. v. Sandy Lane Hotel Co.*, Ltd., 2013 WL 12152494, at *1 (S.D. Fla. Aug. 20, 2013); *Thomsen v. Arts*, 2012 WL 13014713, at *4 (S.D. Fla. May 24, 2012) (citing *Hartcourt Co., Inc. v. Hogue*, 817 So. 2d 1067, 1070 (Fla. 5th DCA 2002)) ("Where a contract does not state the place where payment is due, the legal presumption is that a debt is to be paid at the creditor's place of business."). Therefore, for purposes of Florida's long-arm statute, where a contract does not specify the place of payment, a defendant's failure to make a payment to a Florida resident constitutes an "act[] required by the contract to be

performed in this state." *See* Fla. Stat. § 48.193(1)(a)(7); *see also Arbitrage Int'l Mktg., Inc. v. DeMaria*, 2010 WL 3941805, at *3 (S.D. Fla. Oct. 6, 2010); *Hartcourt Co., Inc.*, 817 So. 2d at 1070.

Defendants argue that they are not subject to either general or specific personal jurisdiction in Florida because they are not "at home" in Florida and Plaintiffs' claims do not relate to Defendants' alleged contacts in Florida. (DE 11 at 3–5.) The Court agrees that Defendants—California and Delaware entities—are not subject to general personal jurisdiction in Florida. However, Defendants are subject to specific personal jurisdiction in this state under Florida's long-arm statute. As alleged by Plaintiffs, Defendants were contractually obligated to pay Plaintiffs a finders' fee under the Agreement should Mullen Technologies enter into a reverse triangular merger with NETE. (DE 1 at 7–8.) Given that the reverse triangular merger occurred on November 5, 2021 (*id.* at 8), Defendants were obligated to pay Plaintiffs, and Defendants alleged failure to pay Plaintiffs the finders' fee constitutes a breach of the Agreement. Because the Agreement does not specify in what state payment is to be made, the breach of the Agreement for non-payment occurs in the state where plaintiff is domiciled. *See New Life Mgmt. Co.*, 2013 WL 12152494, at *1. Being that TOA—the signatory to the Agreement and one of the Plaintiff-Creditors—is domiciled in Florida,[2] Defendants' alleged failure to pay Plaintiffs a finders' fee falls under section 48.193(1)(a)(7) of the Florida long-arm statute.

---

[2] Defendants' argument that Plaintiff TOA is a Delaware entity is a non-starter. In addition to Delaware, Plaintiff TOA is "at home" in Florida given that Florida is TOA's principal place of business. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (holding that a corporation is "at home" and, therefore, subject to general personal jurisdiction at its place of incorporation ***and*** principal place of business).

2. *Due Process*

Having found that Florida's long-arm statute permits jurisdiction, the Court reaches the jurisdictional analysis under the Due Process Clause of the Fourteenth Amendment. To determine whether the exercise of personal jurisdiction over Defendants would satisfy the requirements of due process, the court must undergo a two-step analysis. The Court must first decide whether Defendants had "minimum contacts" with Florida and then whether the exercise of personal jurisdiction over Defendants would offend "traditional notions of fair play and substantial justice." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (citations omitted).

a. <u>Minimum contacts</u>

Courts must establish whether a defendant has "minimum contacts" in a jurisdiction to ensure that parties have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Madara*, 916 F.3d at 1516 (citations omitted). In other words, jurisdiction is proper where the defendant has engaged in conduct that creates a "substantial connection" with the forum state, such that the defendant "should reasonably anticipate being haled into court there." *Id.*; *see also Burger King*, 471 U.S. at 474; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Defendants argue that none of the Florida contacts alleged against them have anything to do with Plaintiffs' claim that Mullen—Delaware and/or California entities—failed to compensate them for "their services relating to a California-based spinoff merger." (DE 11 at 5.) They further elaborate: "Plaintiffs' jurisdictional allegations against the Defendants solely arise out of their connections to purchasing Net Element." (*Id.*) However, these are misleading characterizations of the Parties' dispute.

Defendants purposefully directed their activities at Florida when they negotiated and entered into the Agreement with Plaintiff TOA, a Florida-based company, that was predicated on the successful acquisition of NETE, another Florida-based company. (DE 13 at 9.) Moreover, that Agreement contains a Florida choice-of-law provision. (*Id.*; DE 1-1.) As anticipated by the Agreement, Defendants negotiated the purchase of and ultimately acquired the Florida-domiciled company, NETE. (DE 13 at 9; DE 1 at 13.) However, Defendants failed to pay Plaintiffs the finders' fee contemplated in the Agreement. (DE 13 at 9; DE 1 at 8, 14.) Additionally, in connection with this transaction, Defendants' CEO, Mr. Michery, sent multiple emails to Plaintiff TOA's owner, Mr. Martinez, and made numerous phone calls to Mr. Martinez on his cell phone, which has a Florida (Miami) area code. (DE 13 at 9; DE 15; DE 18-1.)[3] Mr. Martinez declares that

---

[3] In support of their Response in Opposition to Defendants' Motion to Dismiss, Plaintiffs sought to submit Mr. Martinez's phone records. Plaintiffs represented that they had ordered Mr. Martinez's phone records from T-Mobile but had not yet received them at the time of the filing. (DE 15.)

On September 29, 2022, Plaintiffs filed a Motion for Leave to File Supplement to Plaintiffs' Opposition to Defendants' Motion to Dismiss ("***Motion for Leave***"). (DE 18.) As an exhibit to the Motion for Leave, Plaintiffs submitted Mr. Martinez's redacted cell phone records. (DE 18-1.) Defendants did not file a response to the Motion for Leave. Upon review of the Motion for Leave and the record, the Motion for Leave is **granted**.

the substance of his calls with Mr. Michery related directly to the terms and negotiation (and attempted renegotiation) of the Agreement. (DE 15; *see also* DE 13 at 9.) Such phone calls and emails, which are related to the conduct giving rise to this lawsuit, are sufficient to establish minimum contacts in Florida. *See Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009) (establishing that defendant had minimum contacts in Florida based on "uncontested evidence that numerous telephone calls and emails were sent by" defendant to Florida plaintiffs); *id.* at 1293 (citing *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 551–52 (6th Cir. 2007)) ("[N]umerous telephone calls, emails and facsimiles initiated by the non-resident defendant can demonstrate purposeful availment."). And the fact that the Parties included a Florida choice-of-law provision in the Agreement further supports Plaintiffs' assertion that the Court has jurisdiction over Defendants. *See Franchise Consulting Co., Inc. v. Crestcom Int'l, LLC*, 2020 WL 13567914, at *4 (S.D. Fla. Feb. 21, 2020) (citing *Burger King*, 471 U.S. at 482 (1985)) ("To determine whether a defendant purposely availed itself of the privilege of conducting activities within the forum State, courts consider choice-of-law provisions.").

In summary, Plaintiffs do not contend that Defendants' connections to Florida "solely arise out of their connections to purchasing Net Element." Rather, it is the Agreement that arises out of Defendants' connections to purchasing Net Element. As alleged by Plaintiffs, Defendants' connections to Florida arise out of the alleged breach of that Agreement. Accordingly, Plaintiffs' claims arise out of the activity Defendants "purposefully directed" into the state of Florida, and Defendants should reasonably have

anticipated being "haled into court" here. *See Madara*, 916 F.3d at 1516; *see also Burger King*, 471 U.S. at 472, 474.

b. <u>Fair play and substantial justice</u>

Having found that Defendants' contacts satisfy the minimum contacts requirement, it is necessary to decide whether exercising personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice. In analyzing the notions of fair play and substantial justice, the Court must consider a host of factors, including the burden on the defendant in defending the suit; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering substantive social policies. *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (citing *World–Wide Volkswagen*, 444 U.S. at 292). "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Id.* (citing *World–Wide Volkswagen*, 444 U.S. at 292).

Here, Plaintiffs' and the state's strong interest in litigating this matter in Florida outweighs any burden on Defendants, interest of the interstate judicial system, or interest of furthering social policies. Florida has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *You Fit, Inc. v. Pleasanton Fitness, LLC*, 2012 WL 12905186, at *6 (M.D. Fla. Dec. 20, 2012) (citing *Burger King*, 471 U.S. at 473) (internal quotations omitted). Moreover, TOA, "a Florida resident, has a great interest in the convenience of litigating in [its] home state." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996). While Plaintiff MunshiBari is

not domiciled in Florida, MunshiBari, like TOA, may obtain effective relief here in Florida where a majority of the events resulting in the alleged breach of the Agreement occurred. *See Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1089 (S.D. Fla. 2020) (stating that "the Court sees no reason why this issue cannot be effectively and efficiently determined" in Florida, which was at least one plaintiff's home forum and "where the alleged contract was to be performed"); *see also Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2021 WL 7501157, at *7 (M.D. Fla. Apr. 15, 2021) (finding that plaintiff has "a strong interest in having [its] claims litigated [in Florida] since the events giving rise to those claims occurred in Florida").

Defendants state that the burden on them to defend this suit outside of California is "very high" because it may require Defendants to make "several trips . . . between Florida and California." (DE 17 at 5.) However, "modern methods of transportation and communication reduce this burden significantly." *Robinson*, 74 F.3d at 259. Further, Defendants' arguments that Plaintiffs could "obtain convenient and effective relief in California," and that "the federal courts [in California] are just as capable" as the federal courts in Florida are unavailing. (DE 17 at 5–6.) On balance, the Court finds that constitutional concerns of fair play and substantial justice are not offended by the exercise of personal jurisdiction over Defendants.

### 3. *The Court may exercise personal jurisdiction over Defendants*

Given that Defendants' alleged conduct falls under Florida's long-arm statute and the exercise of personal jurisdiction over Defendants does not violate due process, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied.

### ii. Motion to Dismiss for Improper Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). As set forth above, Plaintiffs clearly allege that a substantial part of the conduct underlying Plaintiffs' breach of contract claim occurred in this district, including Plaintiff TOA's entering into the Agreement and Defendants' breach of the Agreement. (DE 1 at 3.) Accordingly, venue is proper in the Southern District of Florida, *see Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372–73 (11th Cir. 2003) (holding that, in breach of contract action, venue was proper in the district where employee was presented with the contract, where employee signed the contract, and where the contract was ultimately breached), and Defendants' Motion to Dismiss for Improper Venue is denied.

### III. MOTION TO TRANSFER

Alternatively, Defendants move to transfer this action to the Central District of California. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Determination of whether to transfer venue is a two-pronged inquiry. First, the Court must determine whether the alternative venue is one where the action could have originally been brought; and, second, the Court must balance private and public factors to determine whether transfer is justified. *Cellularvision Tech. & Telecommunications, L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007); *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013); *Mason v.*

*Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001); *Miot v. Kechijian*, 830 F. Supp. 1460, 1465–66 (S.D. Fla. 1993). In deciding the second step, courts weigh numerous factors including the following:

> (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Abbate v. Wells Fargo Bank, Nat. Ass'n*, 2010 WL 3446878, at *5 (S.D. Fla. Aug. 31, 2010) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

Given that both Mullen Technologies and Mullen Automotive reside in Brea, California, which is within the Central District of California, this action could have originally been brought in the Central District of California. 28 U.S.C. § 1391(b)(1). However, the private and public factors, on balance, support maintaining this action in the Southern District of Florida, which is Plaintiffs' chosen forum. *Robinson*, 74 F.3d at 260 (citation omitted) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."); *Osgood*, 981 F. Supp. 2d at 1266 ("Generally, the plaintiff's choice of forum is given considerable deference."). In addition to being Plaintiffs' chosen forum, the breach of contract occurred in the Southern District of Florida, many of the facts giving rise to the Agreement and surrounding its breach occurred in the Southern District of Florida, and Florida law governs the Agreement. (DE 13 at 5.) Given that transfer of this action "would merely shift inconvenience" from Defendants to Plaintiffs, *see Robinson*, 74 F.3d 253 at 260, Defendants' Motion to Transfer is denied.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss for Improper Venue or, in the alternative, Motion to Transfer (DE 11) is **DENIED**. Defendants shall file an answer to Plaintiffs' Complaint within fourteen (14) days of the date of this Order. Additionally, on or before **April 7, 2023**, the Parties shall file a joint conference report and a joint proposed scheduling order.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 21st day of March, 2023.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE