**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

TOA TRADING LLC and
MUNSHIBARI LLC,

Plaintiffs,

v.

MULLEN AUTOMOTIVE, INC. and
MULLEN TECHNOLOGIES, INC.,

Defendants.

Case No. 1:22-CV-21089-KMW

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**I. INTRODUCTION** ........ 1

**II. STATEMENT OF FACTS** ........ 2

**III. ARGUMENT** ........ 5

**A. The Finder's Fee Agreement is Legal and Enforceable under Federal and Florida Law.** ........ 6

**1. Plaintiffs are "Finders" Rather than Broker/Dealers.** ........ 6

**2. Plaintiffs Are Not Brokers Under the Factors Set Forth in *SEC v. Hansen*** ........ 8

**3. The Finder's Fee Agreement is Not Illegal Under Florida Statutes §§ 475.01 or 517.12.** ........ 11

***a. Plaintiffs Were Not Required to Register Under Florida Statute § 517.12.*** ........ 12

***b. Florida Statute § 475.01 is Inapplicable*** ........ 13

**B. Defendants' Contract Formation Arguments Lack Merit.** ........ 15

**1. Defendants' Contention That They Were Coerced into Signing the Finder's Fee Agreement Fails as a Legal and Factual Matter.** ........ 15

**2. The Terms of the Finder's Fee Agreement are not Vague or Incomplete.** ........ 16

**3. Damages Can be Easily Calculated.** ........ 18

**C. Defendants are not Entitled to Summary Judgement on Plaintiffs' Unjust Enrichment Claims.** ........ 19

**D. Defendants are not Entitled to Summary Judgment on Their Request for Declaratory Judgment.** ........ 20

**IV. CONCLUSION** ........ 20

# TABLE OF AUTHORITIES

**Cases**

*Apex Glob. Partners, Inc. v. Kaye/Bassman Int'l Corp.*, No. 3:09-CV-637-M, 2009 WL 2777869,(N.D. Tex. Aug. 31, 2009) .......... 7

*Buehler v. LTI Int'l, Inc.*, 762 So. 2d 530 (Fla. 2d DCA 2000) .......... 15

*ConSeal Int'l Inc. v. Neogen Corp., 488 F. Supp. 3d 1257, 1268–69 (S.D. Fla. 2020).* .......... 18, 19

*Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, No. 8:04CV586, 2006 WL 2620985 .......... 11

*Donato v. AT & T Co.*, 767 So. 2d 1146, 1150 (Fla. 2000) .......... 15

*Dowlen v. Sec'y of Veterans Affs.*, 288 F. App'x 572, 578 (11th Cir. 2008) .......... 5

*Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) .......... 5

*Erhart v. BofI Holding, Inc.*, 445 F. Supp. 3d 831, 841 (S.D. Cal. 2020) .......... 18

*Estate of Etting v. Regents Park at Aventura, Inc.*, 891 So. 2d 558, 558 (Fla. 3d DCA 2004) .......... 15

*Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) .......... 6

*Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1040 (Fla. 1982) .......... 18

*Hayden v. Urvan*, No. 21-82051-CIV, 2023 WL 6310892, at *6 (S.D. Fla. Jul. 24, 2023) .......... 6, 8, 10

*Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1251 (S.D. Fla. 2017) .......... 17

*Innkeepers Int'l, Inc. v. McCoy Motels, Ltd.*, 324 So. 2d 676, 679 (Fla. Dist. Ct. App. 1975) .......... 17

*Lally v. AIM Recovery Servs., Inc.*, 357 So. 3d 745, 745 (Fla. Dist. Ct. App. 2023) .......... 15

*Luck v. McMahon*, No. 3:20-CV-00516 (VAB), 2022 WL 5500934 .......... 18

*Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) .......... 16

*Mod. Realty of Missouri, Inc. v. Shivers & Assocs., Inc.*, 705 F. Supp. 556, 560 (S.D. Fla. 1989.. .......... 13, 14

*Peeples v. Pilcher*, 423 So. 2d 907, 908 (Fla. 1982) .......... 14

*Pinter v. Dahl*, 486 U.S. 622, 643 (1988). ........................................................................ 15

*Previews, Inc. v. Murff*, 502 So. 2d 1317, 1318 (Fla. 1st DCA 1987) ......................................... 15

*Quantum Capital, LLC v. Banco De Los Trabajadores*, 720 Fed. Appx. 539, 541-42 (11th Cir. 2017 ........................................................................................................................ 13

*Quantum Capital, LLC v. Banco de los Trabajadores*, Case No. 1:14-cv-23193-UU, 2016 WL 10536988, (S.D. Fla. Sept. 8, 2016)........................................................................11, 12

*Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006)............................................. 19

*S.E.C. v. M & A W., Inc.*, No. C-01-3376 VRW, 2005 WL 1514101, at *9-10 (N.D. Cal. June 20, 2005), aff'd, 538 F.3d 1043 (9th Cir. 2008). ........................................................................ 7

*Salamon v. Teleplus Enters., Inc., No. CIV. 05-2058 (WHW), 2008 WL 2277094, at *13 (D.N.J. June 2, 2008)* ......................................................................................................6, 11

*Schickedanz Bros.-Riviera Ltd. v. Harris*, 800 So. 2d 608 (Fla. 2001)........................................ 15

*SEC v. Hansen*, No. 83 CIV-3692, 1984 WL2413 (S.D.N.Y. Apr. 6, 1984) ............................ 8, 10

*SEC v. Kramer*, 778 F. Supp. 2d, 1320 (M.D. Fla. 2011) ....................................................8, 9, 11

*SEC v. Margolin*, No. 92 CIV. 6307 (PKL), 1992 WL 279735 (S.D.N.Y. Sept. 30, 1992)........... 8

*Seifert v. SF&P Advisors, Inc.,* No. 19-80877-CIV, 2021 WL 4991252 (S.D. Fla. Mar. 31, 2021) ........................................................................................................................ 18, 19

*Shochet Securities, Inc. v. First Union Corp* ....................................................................... 14

*Spillers v. Five Points Guar. Bank*, 335 So. 2d 851, 852-53 (Fla. Dist. Ct. App. 1976)......... 15, 16

*Stevens v. Penn Nat'l Gaming Inc.*, No. 11-20214-CIV, 2011 WL 13223519 (S.D. Fla. Oct. 17, 2011)........................................................................................................................ 6

*United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) .................................................. 19

*Universal Med. Inv. Corp. v. Mike Rollison Fence, LLC*, 331 So. 3d 242, 246 (Fla. Dist. Ct. App. 2021) .......... 18

*Weimar v. Yacht Club Point Estate*, Inc., 223 So. 2d 100, 102 (Fla. Dist. Ct. App. 1969) .......... 16

*XTEC, Inc. v. Cardsmart Techs., Inc.*, No. 11-22866-CIV, 2014 WL 10250973, at *5 (S.D. Fla. Dec. 2, 2014) .......... 18

**Statutes**

Florida Statute § 475 .......... 2, 13, 14, 15

Florida Statute § 517 .......... 2, 11, 12, 13

## I. INTRODUCTION

This is a simple breach of contract case where Plaintiffs TOA Trading LLC ("TOA") and MunshiBari LLC ("MunshiBari") (collectively "Plaintiffs") are attempting to collect their unpaid finder's fee pursuant to an agreement (the "Finder's Fee Agreement") signed by David Michery, the CEO of Defendants Mullen Automotive, Inc. and Mullen Technologies, Inc. ("Mullen" or "Defendants").

The Finder's Fee Agreement obligates Defendants to pay Plaintiffs a finder's fee, on the date of the closing, if the companies that Plaintiffs introduced to each other—Mullen and Net Element, Inc. ("NETE")—entered a merger. The merger occurred and closed on November 5, 2021 (the "NETE Merger"). Mr. Michery acknowledged that Plaintiffs "did the work" and that "[t]here would be no Net Element deal without this Finder's Fee Agreement in place." (Plaintiffs' Opposition to Defendants' Statement of Material Facts and Plaintiffs' Affirmative Statement of Additional Material Facts ("ASOF") ¶ 18.) Nevertheless, Defendants refuse to honor the contract.

Defendants' *post hac* rationalization for reneging on the contract is that paying Plaintiffs would violate state and federal securities laws because Plaintiffs were acting as "unlicensed brokers." But Plaintiffs simply made an introduction between Mullen and NETE. This reality is reflected in Finder's Fee Agreement itself, which plainly states that Plaintiffs were "finders" who are not required to register with federal and state regulators—and not brokers. Yet, Defendants wrongly assert that Plaintiffs' making the NETE-Mullen introduction, along with forwarding an email to Mr. Michery about the availability of SBA loans during Covid, working on a press release about the NETE Merger and making an introduction that allowed Mullen to get a bridge loan make Plaintiffs "brokers" as a matter of law. Well established case law makes clear that

Defendants are incorrect. They have failed to proffer any evidence that Plaintiffs engaged in typical broker activities, such as advising on the structure of the deal, negotiating its terms or being entrusted with others' funds in connection with an investment.

Defendants also argue that there was no meeting of the minds between the parties because Mr. Michery was "pressured" into signing the Finder's Fee Agreement. This argument is absurd. Mr. Michery, a sophisticated businessman, reviewed the Finder's Fee Agreement and had his CFO and an investment banker review it before singing. The fact that Mr. Michery subjectively felt "pressure" to sign the agreement because he thought it was important for the NETE Merger is insufficient to constitute duress that would justify voiding a contract.

Equally unavailing is Defendants' argument that the Finder's Fee Agreement is too vague and incomplete to enforce. The Finder's Fee Agreement plainly provides that the payment will be three percent of the total purchase price consideration to be paid in the "stock of the surviving public entity" and to be paid "at closing" of the NETE Merger. At best, Defendants' argument demonstrates that the parties have different understandings about the terms of the Finder's Fee Agreement. But case law holds that such factual disputes preclude summary judgment, and the issue should be resolved by a jury.

Finally, Defendants' argument that they are entitled to summary dismissal of Plaintiffs' unjust enrichment claim and that they are entitled to an order declaring the Finder's Fee Agreement illegal are also without merit. They are both premised on Defendants establishing that Plaintiffs were unlicensed brokers as a matter of law—which Defendants have failed to do.

## II. STATEMENT OF FACTS

In May 2020, Oleg Firer, the CEO of NETE, asked Dayan Martinez, the sole member of TOA, if he knew of any entities in the electronic vehicle or telemedicine space that might be

interested in doing a merger or other type of business combination with NETE. (ASOF ¶ 1.) Mr. Martinez knew Mr. Firer because Mr. Martinez's company, TOA, assisted NETE as an independent contractor with publishing press releases. (*Id.* ¶ 2.) After Mr. Firer's inquiry, Mr. Martinez reached out to his friend, Rob Johnson, who suggested that Mr. Martinez should contact Dr. Shaheen Ahamad, an electrical engineer and entrepreneur, and the sole owner of MunshiBari. (*Id.* ¶ 3.) When Mr. Martinez and Dr. Ahmad spoke by phone, Dr. Ahmad suggested Mullen as a potential match. (*Id.*) Dr. Ahmad knew about Mullen because he had spoken with its CEO, David Michery, around December 2019 about electric car technology. (*Id.* ¶ 4.)

Dr. Ahmad called Mr. Martinez back to let him know that Mr. Michery was interested in a potential deal with NETE and, on May 22, 2020, Mullen's CFO, Jerry Alban, sent Dr. Ahmad a Mullen profit and loss statement, a balance sheet and company overview. (*Id.* ¶ 5.) These Mullen materials were prepared by Mullen without any input from Dr. Ahmad. (*Id.*) Dr. Ahmad then forwarded that email with the attached Mullen materials to Mr. Martinez, who shared them with Mr. Firer on May 27 and 28, 2020. (*Id.* ¶ 6.) On May 30, 2020, Mr. Michery, Mr. Ahmad, Mr. Martinez and Mr. Firer participated in a phone call where the executives of the respective companies could introduce their companies. This is the extent of Plaintiffs' involvement in the transaction. (*Id.* ¶ 7.) The history of this background, in which Dr. Ahmad is referred to as "introduction agent for Mullen," is described in NETE's Registration Statement. (*Id.* ¶ 8.) Mr. Michery testified that the description was accurate. (*Id.* ¶ 9.)

The introductory activity leading up to and through the May 30, 2020 phone call was Plaintiffs' only involvement in the NETE Merger, and was also the only conduct Defendants identified in their counterclaim as constituting "broker" activity. (*Id.* ¶¶ 7, 10-11; Defs.' Answer & Countercl. ¶1 (ECF No. 23).) Defendants' counterclaim alleges that "[a]mong other activities,

Plaintiffs performed the following broker/dealer conduct: they identified a potential merger of the two entities, worked together to coordinate and facilitate communication, and staged the introduction of the two parties." (*Id.*) At his deposition, Mr. Michery could not identify any conduct that Plaintiffs were involved in other than making the "[i]ntroduction to a transaction that resulted in a merger of a public entity." (ASOF ¶ 11.) Moreover, Mr. Michery described the information that Plaintiffs forwarded as "preliminary" and stated that the parties had no particular structure in mind for the transaction at the time of the introduction in May. (*Id.* ¶ 12.) Ideas for a structure changed over time—after Plaintiffs made the introduction between NETE and Mullen—and involved input from the investment bank Raymond James. (*Id.*) The final structure was the brainchild of Mr. Michery, who had experience with reverse mergers. (*Id.*)

On June 12, 2020, Mr. Michery had a discussion with Mr. Martinez and Mr. Firer about Mullen paying Plaintiffs a finder's fee; Mr. Michery agreed to do so. (*Id.* ¶ 14.) Mr. Michery asked Mr. Martinez to send him a draft of the Finder's Fee Agreement, which Mr. Martinez did. (*Id.*) The draft provides that Plaintiffs would be entitled to three percent of the purchase price consideration should the deal close and acknowledged that:

> The Finder is not a "broker" or "dealer" within the meaning of Section 3(a)(4) of the Securities Exchange Act of 1934, as amended (the "1934 Act") and is not required, nor by entering into this agreement or performing hereunder shall be required, to register as a broker or dealer under Section 15 of the act.

(*Id.* ¶ 15.)

Mr. Martinez sent the Finder's Fee Agreement to Mr. Michery, who executed it and sent it back without requesting any changes. (*Id.* ¶ 16.) Before signing the Finder's Fee Agreement, Mr. Michery asked Jerry Alban, Mullen's CFO, and Michael Wachs, a "seasoned banker," to review it, in addition to reviewing it himself. (*Id.*) Mr. Michery was comfortable signing the Finder's

Fee Agreement, testifying "[l]ook, we're big boys, right," and admitting that he was not pressured by Mr. Martinez to sign it. (*Id.*) Further, although Mr. Michery testified that Mullen did not have in-house counsel at the time, Mullen was represented by outside counsel, Callie Tempest Jones, but he apparently did not ask her to review it before signing. (*Id.*)

The event that triggered Defendants' obligation to pay the finder's fee to Plaintiffs—the closing of the NETE Merger—occurred on November 5, 2021. (*Id.* ¶ 18.) Mr. Michery testified that Plaintiffs did everything they were required to do under the Finder's Fee Agreement: "[y]ou know, he did the work. And there was never a dispute on the fee. The dispute was related to, you know, how he was going to get paid. . . . There would be no Net Element deal without this Finder's Fee Agreement in place." (*Id.*) Mullen announced the completion of the merger pursuant to which the shareholders of Mullen Automotive, Inc. received 43,971,895 of the 51,731,640 shares issued and outstanding in the ongoing company (85% of the shares) and the ticker symbol was changed from NETE to MULN. The former NETE owned the remaining shares. (*Id.* ¶ 19.)

The merger consideration was 43,971,895 publicly traded shares of stock exchanged between Mullen and NETE to complete the transaction. (*Id.* ¶ 20.) Accordingly, under the terms of the Finder's Fee Agreement, Plaintiffs were entitled to three percent of 43,971,895 shares of common stock (1,319,157 shares of common stock), which traded at $11.77 at the time of the closing. (*Id.*) The value of the fee owed under the Finder's Fee Agreement was $15,526,477 (1,319,157 shares multiplied by $11.77). (*Id.*) Despite Plaintiffs satisfying their obligations under the Finder's Fee Agreement, Defendants refuse to honor the contract. (*Id.* ¶ 22.)

## III. ARGUMENT

As movants, Defendants bear the heavy burden of showing there is "no genuine issue of material fact." *Dowlen v. Sec'y of Veterans Affs.*, 288 F. App'x 572, 578 (11th Cir. 2008);

*Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). "The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hayden v. Urvan*, No. 21-82051-CIV, 2023 WL 6310892, at *6 (S.D. Fla. Jul. 24, 2023) (citations omitted). The evidence supporting a motion for summary judgment must be admissible. The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999).

Defendants' motion must be denied because it is dependent on factual contentions and characterizations that are false, unsupported, disputed and/or inadmissible hearsay.

## A. The Finder's Fee Agreement is Legal and Enforceable under Federal and Florida Law.

Defendants argue that the Finder's Fee Agreement is illegal because it contemplates the payment of shares to Plaintiffs who are unregistered broker/dealers within the meaning of the securities laws. (Dfts.' Br. 8-14.) Defendants' argument fails, as Plaintiffs are clearly "finders" rather than broker/dealers based on abundant record evidence and applicable case law. At the very least, disputed questions of fact preclude summary judgment on this issue.

### 1. Plaintiffs are "Finders" Rather than Broker/Dealers.

Finders are "intermediaries" or "middlemen" who "find potential buyers or sellers, stimulate interest and bring the parties together." *Stevens v. Penn Nat'l Gaming Inc.*, No. 11-20214-CIV, 2011 WL 13223519, at *4-5 (S.D. Fla. Oct. 17, 2011) (citations omitted). The duties of a finder are limited to introducing parties and leaving them to their own transactions. *Id.* at *5. After bringing the parties together, a finder is not involved in negotiating the price or other terms of the

transaction. *See Salamon v. Teleplus Enters., Inc.*, No. CIV. 05-2058 (WHW), 2008 WL 2277094, at *13 (D.N.J. June 2, 2008) (citation omitted). "Merely bringing together the parties to transactions, even those involving the purchase and sale of securities, is not enough" to warrant broker registration under the Securities Exchange Act of 1934 (the "Exchange Act"). *Apex Glob. Partners, Inc. v. Kaye/Bassman Int'l Corp.*, No. 3:09-CV-637-M, 2009 WL 2777869, at *3 (N.D. Tex. Aug. 31, 2009).

*S.E.C. v. M & A W., Inc.* makes a clear distinction between finders and brokers. *See S.E.C. v. M & A W., Inc.*, No. C-01-3376 VRW, 2005 WL 1514101, at *9-10 (N.D. Cal. June 20, 2005), aff'd, 538 F.3d 1043 (9th Cir. 2008). There, under facts similar to those here, the Securities & Exchange Commission ("SEC") accused the defendant of acting as a broker for his "work with the shareholders of private companies to execute such reverse mergers by identifying suitable public shell companies and by, at a minimum, preparing the documents for the reverse mergers and coordinating among the various parties to the reverse mergers." *Id.* at 3. The court *sua sponte* granted summary judgment in the defendant's favor because this conduct, as a matter of law, did not amount to broker activity. *Id.* at *9-*10. The court noted that it was common for businesspeople to make an introduction and collect a fee, as the defendant did, but there was no indicia that he was acting as a broker:

> In particular, no assets were entrusted to Medley, and the Commission identifies no evidence that he was authorized to transact "for the account of others". . . . **Although Medley was in the business of facilitating securities transactions among other persons, the Commission cites no authority for the proposition that this equates to "effecting transactions in securities for the account of others**."

*Id.* (emphasis added).

The same conclusion—that Plaintiffs acted as finders and not brokers—should be reached here. The evidence in this case indisputably shows that Plaintiffs merely brought the parties

together, including: the Finder's Fee Agreement signed by Defendants' CEO, the NETE S-4 registration statement, and the deposition testimony of Defendants' CEO. (NOF Ex. 9 ("[t]he Finder is not a "broker" or "dealer" within the meaning of Section 3(a)(4) of the Securities Exchange Act of 1934")); (NOF Ex. 18, ECF No. 45-18 at 135) (describing Plaintiffs as "introductory agents.")); (Ex. B, Michery Dep., 102:22-103:4 (acknowledging the extent of Plaintiffs' activities in the transaction was making the introduction that ultimately led to the merger).) Further, Plaintiffs affirmatively testified that they had no involvement in the NETE Merger after they introduced the parties. (Ex. G, Martinez Dec. ¶¶ 5, 9-14; Ex. H ¶¶ 5-11.)

### 2. Plaintiffs Are Not Brokers Under the Factors Set Forth in *SEC v. Hansen*

Defendants fail to cite sufficient evidence to establish that Plaintiffs acted as brokers rather than finders. The most frequently cited factors to determine whether a person qualifies as a broker under the Exchange Act are identified in *SEC v. Hansen*, No. 83 CIV-3692, 1984 WL2413, at *10 (S.D.N.Y. Apr. 6, 1984). Those factors are:

> whether a person (1) works as an employee of the issuer, (2) receives a commission rather than a salary, (3) sells or earlier sold the securities of another issuer, (4) participates in negotiations between the issuer and an investor, (5) provides either advice or a valuation as to the merit of an investment, and (6) actively (rather than passively) finds investors.

*S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1334 (M.D. Fla. 2011) (citing *Hansen*).[1] Although no single factor is dispositive, to find that a person acted as a "broker," "the evidence must demonstrate involvement at 'key points in the chain of distribution,' such as participating in the negotiation, analyzing the issuer's financial needs, discussing the details of the transaction, and

[1] Defendants purport to list the factors in *SEC v. Margolin* (Defs.' Br. 12-14), but the factors Defendants list do not appear in that case. *See SEC v. Margolin*, No. 92 CIV. 6307 (PKL), 1992 WL 279735 (S.D.N.Y. Sept. 30, 1992).

recommending an investment." *See id.* at 1336 (internal cite omitted); *see also Hayden*, 2023 WL 6310892, at *6 (citations omitted).

*Kramer* illustrates how courts apply and evaluate these factors in practice. There, the defendant, Kramer, a former bond salesman and options trader, introduced a company, Skyway, to a broker, Talib, who raised money for Skyway by selling its shares to his clients. *See id.* at 1329-31. He also introduced a small group of people he had prior relationships with to Skyway, informing them that he believed Skyway was a good company. *See id.* at 1331-33. Kramer received percentage-based compensation from Skyway based on the shares in Skyway that the broker sold and that the small group purchased through their own brokerage accounts. *See id.* at 1329 & 1338-40.

Regarding the purchases through Talib, the court found that "***Kramer's conduct consisted of nothing more than bringing together the parties to a transaction***" and that the SEC presented no evidence that Kramer participated in negotiations regarding the sales of securities, discussed details of the transactions between Talib and Skyway or promoted an investment in Skyway to Talib or to his investors. *See id.* at 1339 (emphasis added). The Court concluded that "Kramer's receiving transaction-based compensation for introducing Talib to Skyway cannot, without additional evidence, qualify Kramer [as] a broker under Section 15(a)." *Id.* at 1339.

The Court likewise rejected the SEC's argument that Kramer acted as a broker as a matter of law when dealing with the small group of friends and prior contacts[2] because he never:

---

[2] The court noted that the "nature of a person's relationship with another . . . may support either the absence or the presence of broker activity." *Kramer*, 778 F. Supp. 2d at 1339. Here, like the defendants in *Kramer*, Plaintiffs reached out to only a small group of people who they were already acquainted with, like their friend Rob Johnson. *See id*. The court in *Kramer* viewed this as not being broker activity. *See id.* at 1341.

> (1) sold a share of Skyway; (2) participated in the purchase and sale of a Skyway security; (2) provided advice or other information about the investment; (3) advertised or distributed promotional material for Skyway; (4) sponsored a seminar or social event at which Kramer promoted Skyway; (5) sold the security of another issuer; (6) hired employees to contact potential investors about Skyway; (7) called a potential investor (i.e., someone other than one of Kramer's intimate friends); or (8) encouraged a broker to sell Skyway securities.

*Id.* at 1340.

Recently, the court reached a similar conclusion in *Hayden*. *See* 2023 WL 6310892, at *9. There, the defendant agreed to transaction-based compensation with plaintiff, Hayden, if he could find a company to purchase the defendant's business. *Id.* at *5. Hayden, an active investor who had worked in the financial industry for twenty years, had not been licensed with the SEC or Florida in the five years leading up to the transaction. *Id.* at *1 & *3. To make the introduction, Hayden asked the defendant for an executive summary that he could share with potential purchasers, improved upon the executive summary, and had calls with the defendant discussing "the logistics of how an acquisition might work." *Id.* at *2. The defendant closed a deal with Gemini, a company that Hayden had introduced to the defendant. *Id.* at *3.

The Court rejected the defendant's argument that Hayden acted as a broker in the transaction. *Id.* at *9. Applying the factors listed in *Hansen*, the court noted that the plaintiff was seeking transaction-based compensation, that he may have sold securities of other issuers and that he actively sought out buyers for the defendant's business. *Id.* (citing *Hansen*, 1984 WL 2413, at *10). However, the court denied the defendant's motion for summary judgment, holding that there were genuine issues of material "[g]iven the lack of evidence of Hayden's involvement in the Gemini [s]ale, as to Hayden's involvement in any negotiations, and as to whether Hayden made valuations as to the merits of the investment." *Id.*

Like *Kramer* and *Hayden*, Defendants here cannot establish, as a matter of law, that Plaintiffs acted as brokers. Defendants' failure to establish that Plaintiffs had any involvement in advising on the structure of the deal, negotiating its terms or participating in the purchase or sale of any securities for anyone in connection with the transaction in question precludes summary judgment, even if Plaintiffs are seeking transaction-based compensation[3] and worked in the securities industry years ago (as in *Kramer*) or currently (as in *Hayden*). The additional facts that Defendants point to beyond the introduction, including forwarding an email to Mr. Michery to inform him of the availability of an SBA loan, working on a press release for NETE relating to the merger and making an introduction that allowed Mullen to get a bridge loan, do not amount the type of conduct that courts require before finding a person acted as a broker. *See Kramer*, 778 F. Supp. 2d at 1336 (broker activity requires involvement "such as participating in the negotiation, analyzing the issuer's financial needs, discussing the details of the transaction, and recommending an investment"). Summary judgment is, therefore, not warranted.

**3. The Finder's Fee Agreement is Not Illegal Under Florida Statutes §§ 475.01 or 517.12.**

Defendants argue that the Finder's Fee Agreement is void and unenforceable under Florida Statutes §§ 475.01 and 517.12. (Defs.' Br. 8.) Defendants conflate these two statutes in

[3] *See Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, No. 8:04CV586, 2006 WL 2620985, at *10-*12 (D. Neb. Sept. 12, 2006) (refusing to rescind the contract at issue on summary judgment though the party received transaction-based compensation, because a determination of broker activity requires consideration of the "nature, extent, and timing of the activities undertaken"); *see also Quantum Capital, LLC v. Banco de los Trabajadores*, Case No. 1:14-cv-23193-UU, 2016 WL 10536988, at *7 (S.D. Fla. Sept. 8, 2016) ("commission-based payment, standing alone, is not dispositive of whether a party acts as a broker-dealer under the Exchange Act"); *Salamon*, 2008 WL 2277094, at *8-*9 (denying summary judgment where consultant received a transaction-based commission and denied that he was involved in the negotiation or structuring of the deal).

their brief; however, only Florida Statute § 517 "Securities Transactions" under Title XXXIII "Regulation of Trade, Commerce, Investments, and Solicitations" is applicable to the issues in this case.

**a. Plaintiffs Were Not Required to Register Under Florida Statute § 517.12.**

Florida Statute § 517.12 requires registration to sell or offer for sale securities in the state of Florida. *See Quantum*, 2016 WL 10536988, at *5. When interpreting Florida Chapter 517, courts look to interpretations of the Exchange Act for guidance. *See id.* at *6. As detailed above, the evidence shows that under the relevant case law interpreting the Exchange Act, Plaintiffs are finders, not brokers. Therefore, Plaintiffs were not required to register under Florida Statute § 517.12.

Further, Defendants fail to cite two statutory exemptions to the registration requirements of Florida Statute § 517.12 that apply here:

> Florida Statute § 517.061(8), which exempts persons involved in "the sale of securities from one corporation to another corporation provided that: (a) the sale price of the securities is $50,000 or more; and (b) the buyer and seller corporations each have assets of $500,000 or more;" and
>
> Florida Statute § 517.061(9), which exempts persons involved in "the offer or sale of securities from one corporation to another corporation, or to security holders thereof, pursuant to a vote or consent of such security holders as may be provided by the articles of incorporation and the applicable corporate statutes in connection with mergers, share exchanges, consolidations, or sale of corporate assets."

The NETE Merger involved securities valued at more than $50,000, and both companies had assets on their balance sheet of $500,000 or more. (NOF Ex. 18, S-4, ECF No. 45-18 at 348, 422.) Therefore, Plaintiffs are exempt from Florida's registration requirement under Florida Statute § 517.061(8). Likewise, the NETE Merger involved "the offer or sale of securities from one corporation to another corporation . . . pursuant to a vote or consent of such securities

holders . . . in connection with [a] merger[].” (Ex. E, November 2021 8-K.) Plaintiffs are also exempt from Florida’s registration requirement under Florida Statute § 517.061(9). The Eleventh Circuit has held, under similar circumstances, that parties were exempt from the registration requirement under Florida Chapter § 517.12 as a matter of law. *See Quantum Capital, LLC v. Banco De Los Trabajadores*, 720 Fed. Appx. 539, 541-42 (11th Cir. 2017).[4]

***b. Florida Statute § 475.01 is Inapplicable.***

Florida Statute § 475 is inapplicable here. Defendants’ primary defense for non-performance of the Finder’s Fee Agreement is that Plaintiffs acted as unlicensed brokers under the securities laws. They ask the Court to declare the Finder’s Fee Agreement “unenforceable because it constitutes ***an illegal finder’s fee of securities to be transferred to an unlicensed broker/dealer*** as a transaction-based payment.” (Answer & Countercl. ¶11 (ECF No. 23) (emphasis added).) Defendants claim that performing under the Finder’s Fee Agreement would be “illegal under Florida and SEC law as compensation to unlicensed broker/dealers for ***performing a securities transaction***.” (Defs.’ Br. 20 (emphasis added).)

Nevertheless, Defendants cite the definition of “broker” from Florida Statute § 475.01(1)(i), which is inapplicable, because it does not seek to regulate the securities laws that Defendants claim are at issue in this case. (*See* Defs.’ Br. 9-10.) That statute was designed “to protect the public from being forced to deal with dishonest or unscrupulous real estate operators, rather than to permit one party to gain unconscionable advantage by avoiding a just obligation which he has contracted to pay.” *Mod. Realty of Missouri, Inc. v. Shivers & Assocs., Inc.*, 705 F.

[4] Defendants’ argument that the Finder’s Fee Agreement is void because it violates “centuries old public policy” established through Florida Statute § 517.12 (*see* Defs.’ Br. 14) is unavailing because, as discussed above, Plaintiffs did not violate that statute, or any statute.

Supp. 556, 560 (S.D. Fla. 1989) (citation omitted).[5] Further, the statute is "highly penal" and "should be strictly construed." *Geneva Inv., Ltd. v. Trafalgar Devs.*, Ltd., 274 So. 2d 581, 583 (Fla. Dist. Ct. App. 1973).

*Modern Realty* provides guidance on the limits of this statute. There, the court refused to enforce the statute to allow a resort to void a contract with sales agents who did not possess real estate licenses that the resort had hired on a commission basis to sell time shares. *Mod. Realty*, 705 F. Supp. at 558-60. The court cited the above policy language and noted that the defendants did not fall within the class of persons the statute was designed to protect. *Id.* at 560. In fact, the defendants benefitted from the service they asked the plaintiff to perform. *Id.* Like the defendants in *Modern Realty*, Defendants do not fall within the class of persons the statute was designed to protect, and Defendants benefitted from Plaintiffs services. Indeed, Mr. Michery testified that Plaintiffs "did the work" and that "[t]here would be no Net Element deal without this Finder's Fee Agreement in place." (ASOF ¶ 18.) As such, the Court here should not permit Defendants "to gain unconscionable advantage by avoiding a just obligation which [it] has contracted to pay." *Mod. Realty*, 705 F. Supp. at 560.

Finally, Florida Statute § 475.01 cannot be constitutionally applied against Plaintiffs. In *Shochet Securities, Inc. v. First Union Corp.*, the court held that Florida Statute § 475.01(3) could not be constitutionally applied against a plaintiff suing to recover a broker or finder's fee from a defendant for arranging to purchase a securities brokerage company. *See* 663 F. Supp. 1035, 1038 (S.D. Fla. 1987). Article 3, Section 6 of the Florida Constitution requires that the title of a statute "give notice of the subject of the statute so as reasonably to lead interested persons to

[5] While the statute was amended in 1982 to encompass activities of sales appraisers and other sales professionals, securities related activities still fall under Florida Statute § 517.12.

inquire into the body of the act." *Id.* at 1037 (quoting *Peeples v. Pilcher*, 423 So. 2d 907, 908 (Fla. 1982)). The court held that the title of Florida Statute § 475.01—Real Estate Brokers, Sales Associates, and School—failed to reasonably alert interested persons that the statute might apply to them. *Id.* at 1038. Therefore, it would have been unconstitutional to apply the statute to them. *Id.* Likewise, it would violate the Florida Constitution to apply Florida Statute § 475 to the Finder's Fee Agreement in this case. [6]

**B. Defendants' Contract Formation Arguments Lack Merit.**

**1. Defendants' Contention That They Were Coerced into Signing the Finder's Fee Agreement Fails as a Legal and Factual Matter.**

Defendants argue that the Finder's Fee Agreement cannot be enforced, and summary judgment is warranted, because Mullen's CEO "had no opportunity to negotiate" the Finder's Fee Agreement, so there was no meeting of the minds. (*See* Defs.' Br. 15-16.) This argument fails both as a legal and factual matter. Pressure exerted during business negotiations is legal conduct that cannot be the basis for nullifying a contract on the grounds of duress or coercion. *See Spillers v. Five Points Guar. Bank*, 335 So. 2d 851, 852-53 (Fla. Dist. Ct. App. 1976). "Business compulsion is not established merely by proof that consent was secured by the pressure of financial circumstances." *Id.* at 835 (citation omitted). "Duress involves a step beyond mere illegality and implies that a person has been unlawfully constrained or compelled

[6] The cases cited by Defendants that reference Florida Statute § 475 do not involve securities transactions but involve "broker" activity more closely aligned with the statute's title. *See* Defs.' Br. at 9-10 (citing *Previews, Inc. v. Murff*, 502 So. 2d 1317, 1318 (Fla. 1st DCA 1987), *Schickedanz Bros.-Riviera Ltd. v. Harris*, 800 So. 2d 608 (Fla. 2001) and *Buehler v. LTI Int'l, Inc.*, 762 So. 2d 530 (Fla. 2d DCA 2000)). Defendants also cite two off topic cases that do not address, let alone support, what Defendants' claim. *See* Defs.' Br. at 9-10 (citing *Donato v. AT & T Co.*, 767 So. 2d 1146, 1150 (Fla. 2000) and *Pinter v. Dahl*, 486 U.S. 622, 643 (1988).

by another to perform an act under circumstances which prevent the exercise of free will." *Lally v. AIM Recovery Servs., Inc.*, 357 So. 3d 745, 745 (Fla. Dist. Ct. App. 2023) (quoting *Estate of Etting v. Regents Park at Aventura, Inc.*, 891 So. 2d 558, 558 (Fla. 3d DCA 2004)).

Defendants have not met these exacting legal requirements. First, the basis for Defendants' argument is Mr. Michery's deposition testimony that NETE's CEO, Mr. Firer, told him that he must sign the Finder's Fee Agreement if he wanted to move forward with the NETE Merger. (Defs.' SOF ¶ 26.) This is classic inadmissible hearsay and cannot be considered on summary judgment. *See Macuba*, 193 F.3d at 1322. Second, Mr. Michery's subjective feeling of pressure from financial circumstances does not meet the standard for the type of duress required to invalidate a contract. *See Spillers*, 335 So. 2d at 851. Third, the statement that Defendants did not have a chance to negotiate is contrary to the facts. (*See* ASOF ¶ 16.) Defendants' argument that there was no meeting of the minds because they felt pressure or could not negotiate the terms of the Finder's Fee Agreement is frivolous.

**2. The Terms of the Finder's Fee Agreement are not Vague or Incomplete.**

Defendants contend that the terms of the Finder's Fee Agreement include vague or incomplete terms relating to the compensation Plaintiffs were entitled to receive; and therefore, the contract should therefore be nullified in its entirety. (*See* Defs.' Br. 16-17). The Finder's Fee Agreement is neither vague nor incomplete. It expressly provides that Plaintiffs were to receive three percent of "the stock of the surviving public entity at closing." (ECF No. 45-9, NOF 9 (Finder's Fee Agreement).) The fee was to be paid 50% to TOA and 50% to Munshibari.[7] *Id.* The surviving publicly traded entity was clearly Mullen. *Id.*

---

[7] Defendants' contention that they should be relieved of their obligation to pay half of the finder's fee because MunshiBari was not a signatory to the Finder's Fee Agreement (Defs.' Br. 8,

Defendants raise the straw-man argument that the Finder's Fee Agreement does not specify the type of shares to be paid. (Defs.' Br. 16.) The Finder's Fee Agreement refers to payment of "stock of the surviving company." (ECF No. 45-9, NOF 9.) Under Florida law, "words are to be given their natural, ordinary meaning." *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1251 (S.D. Fla. 2017). The term "stock" should be interpreted using the most ordinary understanding of the word—common stock—instead of trying to read into the contract more esoteric forms of stock like "preferred" or "Series A" stock. *See id.* Moreover, the common stock was specifically identified to define the purchase price consideration in Mullen-NETE's letter of intent (ASOF ¶ 17), in the S-4 (ECF No. 45-18, NOF Ex. 18 at 559 of 600) and common stock is, in fact, what the parties contemplated. Mr. Martinez and Mr. Michery discussed this before executing the contract and decided that the payment would be in "freely tradeable common stock." (Ex. A, Martinez Dep. 130:16-25.)

Defendants also contend that "it's unclear how much Defendants would be required to pay, or how that amount would be calculated, per the terms of the FFA." (*See* Defs.' Br. 16.) That's inaccurate. The Finder's Fee Agreement plainly provides that the payment will be three percent of the total purchase price consideration to be paid in the "stock of the surviving public entity" and to be paid "at closing" of the NETE Merger. (NOF Ex. 9.) Plaintiffs contend that the Finder's Fee Agreement contemplates the payment of 1,319,157 shares of common stock as a finder's fee. (ASOF ¶ 20.) Defendants disagree with Plaintiffs' understanding. The remedy for a

---

n.2) is baseless, given the fact that the agreement expressly identifies MunshiBari as a payee. "Florida has long recognized the propriety of a third party beneficiary who is not a party to a contract suing for damages as the result of the acts of one of the parties to the contract." *Weimar v. Yacht Club Point Estate*, Inc., 223 So. 2d 100, 102 (Fla. Dist. Ct. App. 1969). *Brown v. Carnival Corp.*, 215 F. Supp. 3d 1312, 1319 (S.D. Fla. 2016) (recognizing third party breach of contract claim where the contract expresses an intent "either expressed by the parties or in the provisions of the contract" to directly benefit the third party).

disagreement regarding the understanding of contract terms is not to invalidate the contract. *See Innkeepers Int'l, Inc. v. McCoy Motels, Ltd.*, 324 So. 2d 676, 679 (Fla. Dist. Ct. App. 1975). Rather, courts seek to resolve the ambiguity to preserve the purpose of the contract. *See Universal Med. Inv. Corp. v. Mike Rollison Fence, LLC*, 331 So. 3d 242, 246 (Fla. Dist. Ct. App. 2021). Ultimately, disagreements over contract terms are jury questions that preclude summary judgment. *See Seifert v. SF&P Advisors, Inc.,* No. 19-80877-CIV, 2021 WL 4991252, at *8 (S.D. Fla. Mar. 31, 2021; *see also ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1268–69 (S.D. Fla. 2020) (citing cases).

**3. Damages Can be Easily Calculated.**

Defendants claim it is impossible for Plaintiffs to calculate damages because they have not retained an expert, and the amount of damages is too speculative. (*See* Defs.' Br. 17.) This argument is without merit. Where damages are a matter of simple computation, expert testimony is not required. *XTEC, Inc. v. Cardsmart Techs., Inc.*, No. 11-22866-CIV, 2014 WL 10250973, at *5 (S.D. Fla. Dec. 2, 2014).[8] The damages in this case are a matter of simple math. Plaintiffs were entitled to three percent of 43,971,895 shares of common stock that were exchanged between Mullen and NETE to close the transaction. This entitled Plaintiffs to 1,319,157 shares of common stock, which traded at $11.77 at the time of closing. (ASOF ¶ 20.) The total amount

[8] *See also Erhart v. BofI Holding, Inc.*, 445 F. Supp. 3d 831, 841 (S.D. Cal. 2020) (expert testimony not required when damages based on "simple arithmetic"); *Luck v. McMahon*, No. 3:20-CV-00516 (VAB), 2022 WL 5500934, at *7 (D. Conn. Feb. 11, 2022) (excluding expert testimony on damages because it was based on simple mathematics that a jury could calculate using common knowledge and common sense).

owed to Plaintiffs under the Finder's Fee Agreement is $15,526,477 or 1,319,157 shares multiplied by $11.77.[9]

While Defendants may have a different view about how damages should be calculated, that is not grounds to void a contract. *See Seifert*, 2021 WL 4991252 at *8; *see also ConSeal Int'l Inc.*, 488 F. Supp. 3d at 1268–69.

### C. Defendants are not Entitled to Summary Judgment on Plaintiffs' Unjust Enrichment Claims.

The elements of an unjust enrichment claim are: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009) (*quoting Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006). Here Plaintiffs' introduction of Mullen to NETE allowed Defendants to merge with a public company and access capital markets. Defendants' CEO testified that this benefited Mullen, and Plaintiffs should be compensated for their efforts. (ASOF ¶ 18.) Thus, there is no question that Plaintiffs conferred a benefit on Defendants, Defendants appreciated that benefit, and it would be inequitable and unjust for Defendants to retain that benefit without compensating Plaintiffs for their role in creating it.

[9] Since the closing of the merger, MULN shares have declined significantly in value. However, the party that breaches the contract bears the risk of a decline in value, and Plaintiffs are entitled to be made whole based on the value of the stock at the time of closing. *Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1040 (Fla. 1982) ("Damages for breach of contract should be measured as of the date of the breach. . . . Fluctuations in value after the breach do not affect the nonbreaching party's recovery."). Plaintiffs were prepared to sell their shares as soon as they received them and had the means to do so. (ASOF ¶ 21.)

### D. Defendants are not Entitled to Summary Judgment on Their Request for Declaratory Judgment.

Defendants argue that they are entitled to declaratory relief because performance under the contract would be "illegal under Florida and SEC law as compensation to unlicensed broker/dealers for performing a securities transaction." (Defs.' Br. 20.) As discussed above, in § III.A., Defendants are incorrect and, at a minimum, factual disputes remain for the jury to decide.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion must be denied.

DATED: October 27, 2023

Respectfully submitted,

/s/ Manuel J. Dominguez
Manuel J. Dominguez (Fla. Bar No. 0054798)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
jdominguez@cohenmilstein.com

Barry Taus
PRO HAC VICE
Kevin Landau
PRO HAC VICE
**TAUS, CEBULASH & LANDAU, LLP**
123 William St, Suite 1900A
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
btaus@tcllaw.com
klandau@tcllaw.com