**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

TOA TRADING LLC and
MUNSHIBARI LLC,

Plaintiffs,

v.

MULLEN AUTOMOTIVE, INC. and
MULLEN TECHNOLOGIES, INC.,

Defendants.

Case No. 1:22-CV-21089-KMW

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE**

# TABLE OF CONTENTS


1. **Defendants fail to rebut Plaintiffs' contention that Defendants should be precluded from offering argument or evidence about the decline in Mullen's stock price after the closing of the merger between Mullen and Net Element, Inc. ("NETE")** .......... 2

2. **Defendants fail to rebut Plaintiffs' contention that Defendants should be precluded from offering argument or evidence that purported SEC or IPO lock up rules and regulations would have prevented Plaintiffs from selling their Mullen shares immediately if they had received their finder's fee on the date of the closing of the NETE Merger.** .......... 4

3. **Defendants fail to rebut Plaintiffs' contention that Defendants should be precluded from offering argument or testimony from their CEO that it would have been illegal for Defendants to pay the finder's fee directly to Plaintiffs, or that the parties to the Finder's Fee Agreement could have gone to jail if he did so.** .......... 5

4. **Defendants fail to rebut Plaintiffs' showing that the BrokerCheck Report purportedly showing that Mr. Martinez was prevented from reinstating his FINRA license for disciplinary reasons is inaccurate and inadmissible.** .......... 6

5. **Defendants should be precluded from offering argument or evidence that they felt pressured to sign the Finder's Fee Agreement, or that such feelings impacted the validity or enforceability of the Finder's Fee Agreement.** .......... 9

Plaintiffs TOA Trading LLC ("TOA") and MunshiBari LLC (collectively "Plaintiffs") reply to Mullen Automotive, Inc. and Mullen Technologies, Inc. (collectively "Mullen" or "Defendants'") opposition to Plaintiffs' motions in limine ("MIL") (ECF No. 60), pursuant to this Court's Practices and Procedures for Civil Cases. Plaintiffs address each evidentiary issue ("Issue") using the same numbering as Plaintiffs' MIL.

**1. Defendants fail to rebut Plaintiffs' contention that Defendants should be precluded from offering argument or evidence about the decline in Mullen's stock price after the closing of the merger between Mullen and Net Element, Inc. ("NETE")[1]**

Defendants breached the Finder's Fee Agreement on November 5, 2021, by failing to pay Plaintiffs their finder's fee on the date that the Mullen-NETE merger closed. Plaintiffs' damage theory is simple: their damages are the number of shares of Mullen common stock they should have received on November 5, 2021 times the per share market price of Mullen's common stock on that date. (ECF No. 49 at 5 (Pls.' Opp. to Defs.' Mot. for Summ. J.).) Since Mullen's common stock was publicly traded on NASDAQ, no complex calculations are required to determine the value of this stock; one need only look at the closing price of Mullen common stock on the closing date ($11.77). *Id.* at 18-19.

Defendants would like to confuse the jury by interjecting an additional factor into this simple damage calculation: consideration of the fact that Mullen's stock price has dropped significantly after the date that Defendants breached the agreement by failing to pay the finder's fee (November 5, 2021.) (ECF No. 63 at 2-4 (Defs.' Combined Opp. to Plaintiffs' MIL).)

[1] Defendants combine their responses to Issues 1 and 2 of Plaintiffs' MIL. Plaintiffs address these issues separately.

But the decline in Mullen's stock price after November 5, 2021 is irrelevant to the damage calculation as a matter of law because damages are calculated on the date of the breach. Therefore, the breaching party must pay damages in the amount of the value of the contractual consideration on the date of the breach, even if the value of that consideration declined after the date of the breach because the aim of money damages for breach of contract is to place the plaintiff in the position the plaintiff would have been in had the contract been fulfilled. *Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1040 (Fla. 1982) ("Damages for breach of contract should be measured as of the date of the breach. . . . Fluctuations in value after the breach do not affect the nonbreaching party's recovery."); *CIMA Cap. Partners, LLC v. PH Cellular, Inc.*, 69 So. 3d 293, 294-95 (Fla. Dist. Ct. App. 2010) (holding that damages are measured on the date of the breach and awarding prejudgment interest where defendants refused the delivery of shares).

Defendants do not address the facts and law cited in Plaintiffs' MIL. Instead, Defendants curiously assert that "[d]amages measured by the loss in value of stock requires expert testimony" and they cite cases purportedly supporting that proposition. (ECF No. 63 at 2-4 (Defs.' Combined Opp. to Plaintiffs' MIL).) Defendants' argument is baseless and nonsensical. Plaintiffs are not seeking damages measured by the loss in value of Mullen stock. To the contrary, Plaintiffs' claim is that Defendants breached the Finder's Fee Agreement when they failed pay the finder's fee *on the date the merger closed.* Plaintiffs' damages are measured on the date of the breach. The decline in the value of Mullen stock after that date is irrelevant.

Defendants' contention that expert testimony is required to value the Mullen stock that Plaintiffs should have received on the date of the closing of the Mullen-NETE merger is also baseless. Mullen stock was publicly traded on NASDAQ. All one needs to do to value these shares is look at the trading price of Mullen stock on November 5, 2021, the date that Plaintiffs

should have received the finder's fee. The cases cited by Defendants are plainly inapplicable, as they involve the valuation of stock in privately held companies or securities fraud cases which require an event study to analyze the drop in stock price after the date of the alleged fraud.[2]

Thus, Defendants have failed to rebut the contention in Issue 1 of Plaintiffs' MIL that evidence of the post-breach decline in Mullen's stock price is irrelevant as a matter of law, and therefore must be excluded under FRE 401. It must also be excluded under FRE 403 because allowing the introduction of this evidence would create a substantial risk of confusing and misleading the jury into falsely believing that Plaintiffs' damages should be lessened because of the post-breach decline in Mullen shares.

**2. Defendants fail to rebut Plaintiffs' contention that Defendants should be precluded from offering argument or evidence that purported SEC or IPO lock up rules and regulations would have prevented Plaintiffs from selling their Mullen shares immediately if they had received their finder's fee on the date of the closing of the NETE Merger.**

In Issue 2 of their MIL, Plaintiffs assert that Defendants should be precluded from offering evidence or argument that Plaintiffs would have been unable to sell their Mullen shares immediately if they had received them on the date of the closing. (ECF No. 60 at 3-4 (Pls.' MIL).) Defendants claim in their summary judgment briefs that there are "IPO lockup" or SEC rules and regulations that would have prohibited Plaintiffs from selling their shares immediately.[3]

---

[2] *Optional Capital, Inc. v. Kyun Joon Kim*, No. CV 04-3866 ABC (PLAx), 2008 WL 11336496 at *4 (C.D. Cal. Jan. 17, 2008) (valuation of stock after alleged fraud in a securities case requires an event study by an expert); *Gelles v. Skrotsky*, 983 F. Supp. 1398, 1404 (M.D. Fla. 1997) (defendants in an ERISA action did not have a fiduciary duty to investigate alternative stock valuation techniques); *Estate of Trompeter v. C.I.R.*, 279 F.3d 767, 769 (9th Cir. 2002) (dispute between the IRS and the Trompeter estate regarding the valuation of a privately-held entity).

[3] *See* ECF No. 47 at 18 (Defs.' Summ. J. Br.) (Defendants argue that immediately sellable common stock is "a logical impossibility due to IPO lockup rules and regulations."); ECF No. 57 at 3 (Defs.' Summ. J. Reply Br.) ("specific SEC regulations governing the valuation, restriction, and sale of stock pursuant to a spinoff merger" impact damage calculations).

But Defendants fail to identify any such rule or regulation in their opposition to MIL Issue 2. Defendants also fail to cite any evidence that, if such rules or regulations existed, they would apply to Plaintiffs, who were never even employed by, let alone officers, directors or executives of, Mullen. (*See* ECF No. 63 at 2-4 (Defs.' Combined Opp. To Plaintiffs' MIL).)

In fact, Defendants do not even address Plaintiffs' contentions. As a result, Plaintiffs' MIL regarding Issue 2 should be granted. Moreover, the deadlines for fact and expert discovery have long passed, and summary judgment has been fully briefed, without citing to any rules or regulations that would have prohibited Plaintiffs from selling their Mullen shares immediately, or that such rules and regulations would have applied to Plaintiffs. (*See* ECF No. 25 at 2-3 (Scheduling Order).) Defendants should not be permitted to offer argument or evidence on this issue now, or at trial.

**3. Defendants fail to rebut Plaintiffs' contention that Defendants should be precluded from offering argument or testimony from their CEO that it would have been illegal for Defendants to pay the finder's fee directly to Plaintiffs, or that the parties to the Finder's Fee Agreement could have gone to jail if he did so.**

Defendants do not substantively respond to Issue 3 of Plaintiffs' MIL, which seeks an order precluding Defendants from offering argument or testimony from their CEO that it would have been illegal for Defendants to pay the finder's fee directly to Plaintiffs, or that the parties to the Finder's Fee Agreement could have gone to jail if he did so. (ECF No. 63 at 4-5 (Defs.' Combined Opp. To Plaintiffs' MIL).) Instead, Defendants mischaracterize Plaintiffs' MIL regarding Issue 3 as a request for summary judgment on Defendants' illegality defense and counterclaim. (ECF No. 63 at 4 (Defs.' Combined Opp. To Plaintiffs' MIL).)

To be clear, Plaintiffs do not request that Defendants be precluded from offering any evidence or testimony as to whether Plaintiffs were brokers or dealers. Defendants are free to

offer relevant, admissible, non-hearsay evidence on this subject, and to argue that such evidence is sufficient to establish that Plaintiffs were brokers or dealers under the multiple factors set forth in the case law.[4]

Plaintiffs' MIL Issue 3 asks that Defendants be precluded from offering inadmissible, irrelevant hearsay testimony, and unsupported lay opinion testimony, in support of their illegality defense and counterclaim at trial. This includes, but is not limited to, testimony that Defendants' CEO, David Michery offered at his deposition that Mr. Wachs, a non-party and non-lawyer, told him that it would have been illegal for Mullen to pay the finder's fee directly to Plaintiff TOA, and that the parties could "go to jail" if Mr. Michery did so. Based on their summary judgment briefs and Rule 56.1 statement, Plaintiffs believe Defendants intend to offer this type of baseless lay opinion and hearsay testimony at trial. (ECF No. 60 at 5 (Pls.' MIL) (citing ECF No. 51-2 (Michery Dep. 89:08-09)); (*id.* (citing ECF No. 45-16 (Michery Dep. 86:08-09).)

Since Plaintiffs' MIL regarding Issue 3 is well grounded in law and fact, and Defendants wholly failed to rebut the evidence or case law cited by Plaintiffs in support of their MIL, Plaintiffs' MIL regarding Issue 3 should be granted.

**4. Defendants fail to rebut Plaintiffs' showing that the BrokerCheck Report purportedly showing that Mr. Martinez was prevented from reinstating his FINRA license for disciplinary reasons is inaccurate and inadmissible.**

Defendants do not even attempt to address the hearsay, relevancy, authenticity, and undue prejudice arguments that Plaintiffs raise in MIL Issue 4, which seeks to preclude Defendants from asserting that Mr. Martinez was disciplined by FINRA, or that such discipline prevented

[4] Nevertheless, this Court has the authority to grant summary judgment *sua sponte* if Defendants have not presented admissible evidence supporting their defenses. *See Quantum Capital, LLC v. Banco De Los Trabajadores*, 720 Fed. Appx. 539, 542 (11th Cir. 2017).

him from seeking reinstatement of his FINRA license. Defendants baldly assert that they are "entitled to introduce" the BrokerCheck report "showing Dayan Martinez's employment history in the financial sector, as well as any and all actions and resolutions taken upon his licenses by way of a Request for Judicial Notice" without offering their reasoning for why they are "entitled." (ECF No. 63 at 5 (Defs.' Combined Opp. To Plaintiffs' MIL).)

Defendants' argument fails for several reasons. First, there is no need to offer the BrokerCheck report to establish "Mr. Martinez's employment history in the financial sector." That fact is not in dispute, and Mr. Martinez will readily testify to it. Moreover, Defendants can establish his past employment history through admissible evidence, including his LinkedIn profile page, which Defendants questioned Mr. Martinez about at his deposition and which Defendants seek to offer as an exhibit at trial.[5]

Second, Defendants clearly want to introduce the BrokerCheck report to try to taint the jury's perception of Mr. Martinez's character, as they (falsely) claim that the report reflects "actions and resolutions taken upon [Mr. Martinez's] licenses." (ECF No. 63 at 5 (Defs.' Combined Opp. To Plaintiffs' MIL).) This is blatantly inadmissible character evidence.[6] Moreover, Defendants fail to explain—indeed even come up with a pretext for—how the report is relevant to their "illegality" defense, which claims that Plaintiffs acted as a broker (and not a finder) in connection with the Finder's Fee Agreement. To establish this defense, Defendants will have to establish that Plaintiffs functioned as a broker (i.e. were they involved in the "key points in the chain of distribution" of

---

[5] Therefore, the BrokerCheck report should be excluded because it is cumulative of other evidence showing Mr. Martinez's employment history in the financial sector. *Chamberlain v. R.J. Reynolds Tobacco Co.*, No. 309CV10809JWGYJBT, 2013 WL 12156418, at *5 (M.D. Fla. Sept. 16, 2013) (granting motion in limine precluding cumulative evidence).

[6] *Murphy v. Precise*, No. 1:16-CV-0143-SLB-DAB, 2017 WL 6002581, at *12 (M.D. Ala. Dec. 1, 2017) (citation omitted) ("Character evidence is of slight probative value and may be very prejudicial.").

the stock); any evidence about whether they carried out their professional duties in their prior life in the financial industry competently is irrelevant.[7] Professional competency is not relevant to this inquiry.[8] Accordingly, Defendants should be precluded from offering the BrokerCheck Report, or suggesting that Mr. Martinez was disciplined under both FRE 401 and 403, because the report is irrelevant to the illegality defense and, even if it was relevant, its highly prejudicial nature clearly outweighs its miniscule probative value.[9]

Third, Defendants do not (and cannot) rebut Plaintiffs' showing that the BrokerCheck Report should be excluded because it contradicts, rather than supports, Defendants' claim that Mr. Martinez was disciplined by FINRA. (ECF No. 60 at 8 (Pls.' MIL) (report merely states that two complaints filed years before the agreement at issue here against Mr. Martinez were dismissed because they lacked merit).)

Finally, Defendants have failed to meet the requirements necessary to establish that it would be appropriate for the Court to take judicial notice of the BrokerCheck report. "The Eleventh Circuit has cautioned that judicial notice should be employed sparingly because it bypasses the safeguards which are involved with the usual process of proving facts by competent evidence." *Dressler v. Fla. Dep't of Educ.*, No. 2:18-cv-311-JES-MRM, 2021 WL 3088674, at *7

---

[7] *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1336 (M.D. Fla. 2011).
[8] The cases Defendants cite for the proposition that "[c]ourts consistently allow this type of evidence" are distinguishable because, unlike here, the admitted evidence was directly relevant to an issue in those cases. *See* ECF No. 63 at 5 (Defs.' Combined Opp. to Plaintiffs' MIL) (citing *In re Software Toolworks Inc.*, 50 F.3d 615, 625 (9th Cir. 1994) (document at issue relevant because jury could infer that, as a drafter of the letter, the Underwriters had access to all information that was available and deliberately chose to conceal the truth"); *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 582 (E.D.N.Y. 1971) (document at issue was paper trail of some efforts underwriter undertook so was relevant to its due diligence defense).
[9] *Peace United, Ltd. v. 1906 Collins, LLC*, No. 17-21881-CIV, 2022 WL 2802796, at *2 (S.D. Fla. July 18, 2022) (evidence of party's purported fraud had "the potential for confusion of the issues, misleading the jury, [ ] needlessly wasting time . . . [and] the danger that the jury will infer more from [Plaintiff's] cross-examination than is fairly inferable.")

(M.D. Fla. July 22, 2021). Courts deny requests for judicial notice when the requesting party fails to delineate the specific facts they wish to the Court to take judicial notice of, or establish the relevance of those facts to the case. *Mokris v. United States*, No. 2:20-CV-34-JES-MRM, 2021 WL 4953146, at *3 (M.D. Fla. Oct. 7, 2021) (report and recommendation adopted) No. 2:20-CV-34-JES-MRM, 2021 WL 4950255 (M.D. Fla. Oct. 25, 2021).[10] Here, Defendants have failed to meet their burden because they only broadly claim that the Court should take judicial notice of the BrokerReport in its entirety, but have failed to identify the specific facts they want judicially noticed or the relevance of such facts. In addition, Defendants have not properly moved for judicial notice.

**5. Defendants should be precluded from offering argument or evidence that they felt pressured to sign the Finder's Fee Agreement, or that such feelings impacted the validity or enforceability of the Finder's Fee Agreement.**

Defendants claim that MIL Issue 5 is "unnecessary and irrelevant to the parties' position" because they do not plan on offering evidence that Defendants felt pressured into signing the Finders' Fee Agreement. (ECF No. 63 at 6 (Defs.' Combined Opp. To Plaintiffs' MIL).) At the same time, they indicate that they plan on offering testimony that they felt pressured to sign the contract quickly and that this purported urgency "relates to the validity of the contract" because it caused the parties to omit "several material terms." *Id.* Such evidence and testimony should be precluded.

[10] *See United States v. Stinson*, No. 614CV1534ORL22TBS, 2016 WL 8488240, at *10 (M.D. Fla. Aug. 26, 2016) (denying request because moving party did not provide "a careful delineation of the fact to be noticed"); *United States v. Falcon*, 957 F. Supp. 1572, 1585 (S.D. Fla. 1997), *aff'd*, 168 F.3d 505 (11th Cir. 1999) ("[A] court may refuse to take judicial notice of facts that are irrelevant to the proceeding or (in certain contexts) otherwise excludable under the Federal Rules.").

First, Defendants readily admit that "[w]hether a valid contract exists between the parties" and "[w]hether the material terms of the agreement between the parties can be ascertained" are issues of law to be decided by the Court. (*See* ECF No. 54 at 5 (Joint Pretrial Stipulation).) Defendants are correct to acknowledge this. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014) ("the question of whether a valid contract exists is a threshold question of law" for the court to decide); *J.S.J. Properties, Inc. v. St. George Apartments, LLC*, No. 2:22-CV-536-JES-NPM, 2022 WL 17850282, at *2 (M.D. Fla. Dec. 22, 2022). Evidence about feeling rushed in contract negotiations should be excluded because it is irrelevant to any factual issue that the jury needs to decide and will likely lead to jury confusion. *Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 8186705, at *9 (S.D. Fla. June 6, 2014) (precluding evidence relating to "extraneous issues" under FRE 401 and 403 because they were irrelevant and would likely confuse jury).

Moreover, feeling rushed into signing a contract is not a recognized breach of contract defense, which Plaintiffs noted in their MIL (ECF No. 60 at 11), but Defendants failed to address. Accordingly, this evidence should be excluded.

DATED: December 22, 2023

Respectfully submitted,

*/s/ Diana L. Martin*
Manuel J. Dominguez (Fla. Bar No. 0054798)
Diana L. Martin (Fla. Bar No. 624489)

COHEN MILSTEIN SELLERS
& TOLL PLLC
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
jdominguez@cohenmilstein.com
dmartin@cohenmilstein.com

Barry Taus
PRO HAC VICE
Kevin Landau
PRO HAC VICE
TAUS, CEBULASH & LANDAU,
LLP 123 William Street, Suite 1900A
New York, NY 10038
Telephone: (646) 873-7654 Facsimile:
(212) 931-0703
btaus@tcllaw.com
klandau@tcllaw.com