**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

TOA TRADING LLC AND
MUNSHIBARI LLC,

Plaintiffs,

v.

MULLEN AUTOMOTIVE, INC. AND
MULLEN TECHNOLOGIES, INC.,

Defendants.

Case No. 1:22-CV-21089-KMW

JURY TRIAL DEMANDED

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO AMEND**

**PROPOSED JURY INSTRUCTIONS**

**TABLE OF CONTENTS**

I. INTRODUCTION …..…………………………………………………………… 1

II. RELEVANT FACTS …….………………………………..……………………… 3

III. ARGUMENT ………………………………………………………………...…… 6

A. Defendants' Motion Should be Denied Because it is Untimely Under the Scheduling Order and Rule 16 ……….…………………………………………….. 6

B. Plaintiffs Would Suffer Extreme Prejudice If Defendants Were Allowed to Introduce this Defense At this Late Date ………………………………………... 9

IV. CONCLUSION ……………………………………………….………………..... 12

# TABLE OF AUTHORITIES

## CASES

*Akeva L.L.C. v. Mizuno Corp.*,

212 F.R.D. 306, 311 (M.D.N.C. 2002) …………………..………………………….. 11

*Antonio Belloso v. Asplundh Tree Expert, Co.*,

No. 617CV2020ORL40GJK, 2019 WL 3386473 (M.D. Fla. May 20, 2019) ……....….. 9

*Belloso v. Asplundh Tree Expert, Co.*,

No. 617CV2020ORL40GJK, 2019 WL 4385684 (M.D. Fla. July 16, 2019) ……....….. 9

*Burger King Corp. v. Berry*,

No. 1:20-CV-21801-UU, 2020 WL 10224201 (S.D. Fla. Sept. 4, 2020) ……………..….... 8

*Est. of Reed v. Nat'l Specialty Ins. Co.*,

No. 19-23178-CIV, 2020 WL 5547922, at *4 (S.D. Fla. July 29, 2020) ……………….. 7

*Goodman-Gable-Gould Co. v. Tiara Condo. Assoc., Inc.*,

595 F.3d 1203 (11th Cir. 2010) ............................................................................... 11

*Hassan v. U.S. Postal Service*,

842 F.2d 260 (11th Cir. 1988) …………………………………………….…......... 8

*In re Rawson Food Serv., Inc.*,

846 F.2d 1343 (11th Cir. 1988) …………………...………………………..….....….. 8

*Incardone v. Royal Carribean Cruises, Ltd.*,

No. 16-20924-CIV, 2019 WL 2709810 (S.D. Fla. June 28, 2019) ………..…………… 11

*Millennium Partners, L.P. v. Colmar Storage, LLC*,

494 F.3d 1293, 1299 (11th Cir. 2007) …..……..…………..…………..…………… 7

*Nelson v. Freightliner LLC*,

No. 5:01-cv-266, 2003 WL 25781423 (M.D. Fla., April 23, 2003) ……..…………….. 10

*Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*,

777 F. Supp. 2d 1322 (S.D. Fla. 2011) …..…………………………………….......... 8

*Rogers v. Hartford Life & Acc. Ins. Co.*,

Civil Action 12-0019-WS-B, 2012 WL 2395194 (S.D. Ala. June 22, 2012) ……......… 7

*Sosa v. Airprint Sys., Inc.*,

133 F.3d 1417 (11th Cir. 1998) ...…………………………………..………….… 6

*TOA Trading LLC v. Mullen Auto., Inc.*,

No. 22-21089-CIV, 2023 WL 8476462 (S.D. Fla. Nov. 27, 2023) ………..…………... 11

*Universal Physician Servs., LLC v. Del Zotto*,

842 F. App'x 350 (11th Cir. 2021) ...…...…………...………………………………… 6

*Waite v. All Acquisition Corp.*,

No. 15-cv-62359, 2016 WL 4433713 (S.D. Fla. April 28, 2016) ……………………… 11

*Wight v. Bluman*,

No. 9:20-CV-81688, 2021 WL 2783878 (S.D. Fla. July 2, 2021) ……………………..… 8

*Woolfolk ex rel. Est. of Woolfolk v. Columbia Cnty.*, FL,

No. 3:07-CV-137-J-25TEM, 2008 WL 2097666 (M.D. Fla. May 16, 2008) ………..… 12

**STATUTES**

17 C.F.R. § 230.144 ……………………………………………………………...…. 1

Federal Rule of Civil Procedure 15 ………………..………………………………………. 6

Federal Rule of Civil Procedure 16 …………………………………………………..……. 6

S.D. Fla. L.R. 16.1(b)(6) ………………..…………………………………………………….. 6

## I. INTRODUCTION

Plaintiffs TOA Trading LLC and Munshibari LLC ("Plaintiffs") submit the following opposition to Defendants' Motion to Amend Proposed Jury Instructions ("Motion") filed by Defendants Mullen Automotive, Inc. and Mullen Technologies, Inc. (collectively "Defendants" or "Mullen").

Defendants attempt to portray their Motion as a simple tweak to their proposed jury instructions. In reality, it is a backdoor attempt to inject a new affirmative defense into the case that they never pled, Plaintiffs were never on notice of, and the parties never litigated. Specifically, the Motion states that "Defendants seek to amend Jury Instruction No. 26 to account for the mandated holding period for restricted securities pursuant to S.E.C. Rule 144" ("Rule 144 Defense") and that Plaintiffs will not be prejudiced because this instruction relates to the 13th affirmative defense in their answer ("13th Affirmative Defense"), in which they generally allege that: "Plaintiffs' claims against Defendants are barred in whole or in part to the extent Plaintiffs suffered ***no damages*** from the breach of contract. A breach of contract is only actionable if Plaintiffs suffered damages as a result of the breach." (Defs.' Mem. 3 (emphasis added).) But that affirmative defense does nothing more than allege a perceived defect in Plaintiffs' prima facie claim—that Plaintiffs have incurred "no damages." In contrast, their newly raised Rule 144 Defense presumes Plaintiffs can establish a prima facie claim, but their damages should be ***reduced*** because, according to Defendants, it is undisputed that Rule 144 applies to the facts in this case.[1]

[1] Rule 144 applies to restricted securities and requires that six months elapse before this specific type of stock can be resold. *See* 17 C.F.R. § 230.144. Mullen's stock price declined in the six-month period following the closing of the transaction that triggered payment to Plaintiffs in the Finder's Fee Agreement.

Defendants' assumptions that their 13th Affirmative Defense put Plaintiffs on notice of the Rule 144 Defense—and that Rule 144 indisputably applies to this case—are demonstrably wrong. Defendants' 13th Affirmative Defense is simply a general allegation that if Plaintiffs suffered ***no damages***, they did not state a claim for breach of contract. It did not notify Plaintiffs that Defendants would be asserting their Rule 144 Defense, during discovery or at trial, which is an allegation that would ***reduce,*** rather than eliminate, Plaintiffs' damages.[2] It was incumbent on Defendants to plead their Rule 144 Defense by the May 5, 2023 deadline to amend their pleadings under the Court's April 7, 2023 Scheduling Order. (ECF No. 25) (the "Scheduling Order"), so that Plaintiffs could litigate the case accordingly.

Allowing the introduction of this new affirmative defense now, after the close of fact and expert discovery —on the eve of trial—would be highly prejudicial to Plaintiffs. As detailed below, in addition to not putting Plaintiffs on notice via an appropriate affirmative defense, Defendants never indicated they would be asserting a Rule 144 Defense during discovery—not in response to interrogatories or in connection with their S.E.C. expert's disclosure (which was struck). Had Plaintiffs known that Defendants were asserting this defense, they would have moved for summary judgment to remove this issue from the case because the defense is based on pure speculation, has no factual support in the existing record, and is contradicted by record evidence that, had Defendants honored their agreement, Plaintiffs were to be paid in unrestricted common stock. Further, because Plaintiffs never had notice of this defense, they never

[2] As detailed in Section III (A) below, even assuming *arguendo* that Rule 144 applied, and would have precluded Plaintiffs from selling their shares for six months after receiving their shares on November 5, 2021, the shares still would have had value six months later (*i.e.* on May 5, 2022).

conducted discovery on this defense (fact or expert). Such guesswork is highly prejudicial to Plaintiffs. As a result, the Court should deny Defendants' Motion.

## II. RELEVANT FACTS

Plaintiffs' complaint alleges that Defendants entered into a contract to pay them a finder's fee in the event a transaction between Mullen and Net Element, Inc.—the companies that Plaintiffs introduced to each other—completed a business combination (the "Finder's Fee Agreement").[3] Defendants failed to honor that agreement, and Plaintiffs brought this action in order to receive payment.[4]

Plaintiffs specifically allege the following regarding the damages they are owed under the Finder's Fee Agreement:

> Under applicable law, Plaintiffs are entitled to be placed in as good a position as they would have been if the Agreement had not been breached. As detailed below, absent the breach of the stock of the surviving company (Mullen) on November 5, 2021, the date of the merger closing. On November 5, 2021, shares of Mullen closed at $11.77 per share. Therefore, the value of the shares to which Plaintiffs were entitled was over $15.5 million at the time of the breach of the Agreement. Plaintiffs are entitled to recover at least the full amount of this value in this lawsuit.

(Complaint ¶ 5; *see also id.* ¶ 48.)

Following this Court's denial of Defendants' motion to dismiss (ECF No. 21), Defendants filed Defendants' Answer and Affirmative Defenses to Complaint with Jury Demand, and Counterclaim for Declaratory Relief on April 4, 2023 ("Answer") (ECF No. 23). Defendants denied the allegations in ¶ 5 and ¶ 48 of the Complaint without any elaboration as to whether Plaintiffs could recover these damages and asserted a total of fifteen affirmative

---

[3] *See, e.g.*, Complaint ¶ 2 (ECF No. 1) ("Complaint"); Order Den. Mot. to Dismiss 2 (ECF No. 21).
[4] *Id.*

defenses. The 13th Affirmative Defense, the only defense relevant to the Motion, alleges: "Plaintiffs' claims against Defendants are barred in whole or in part to the extent Plaintiffs suffered no damages from the breach of contract. A breach of contract is only actionable if Plaintiffs suffered damages as a result of the breach." (Answer 12.)

To the extent Defendants wished to amend their Answer or affirmative defenses, the Court set a May 5, 2023 deadline for them to do so in the Scheduling Order. (ECF No. 25.) Defendants never sought to make such an amendment; nor did they request an extension of time to do so.

The parties engaged in discovery based on the counts in Plaintiffs' Complaint and the affirmative defenses set forth in Defendants' Answer. Plaintiffs propounded two interrogatories that sought discovery as to Defendants' position on the value of the consideration owed under the Finder's Fee Agreement. Specifically, Plaintiffs asked:

- Interrogatory 7: Describe Your Communications and deliberations, if any, as to the value of the consideration to which the Plaintiffs were entitled, or to which Plaintiffs claimed or might claim they were entitled, under the Agreement.

- Interrogatory 9: Describe Your Communications and deliberations, if any, as to what compensation Plaintiffs could or would seek for the services they provided under the Agreement.

(*See* Decl. of Kevin Landau ("Landau Decl."), Ex. A at 18 (Defendants Mullen Automotive, Inc.'s Response to Plaintiffs TOA Trading LLC and Munshibari LLC's First Set of Interrogatories).).

Defendants gave the same "response" to both interrogatories, which—consistent with their 13th Affirmative Defense—indicated that Plaintiffs were not entitled to *any* compensation because they acted as brokers, but made no mention of their Rule 144

Defense as a ground for *reducing* the amount that Defendants would owe Plaintiffs should Defendants not succeed on their "broker" defense:

> Dayan Martinez of TOA Trading unilaterally drafted the terms of the Agreement to comport with his own financial needs and reporting requirements without contemplating the substantive impact of the clauses therein under both Florida law or the federal regulations underscored by the Securities and Exchange Commission governing contracts contemplating transaction-based compensation. . . . After the reverse triangular merger contemplated in the Agreement was finalized, the parties to this litigation had months-long pre-litigation communications by and through counsel for TOA and Munshibari and Mullen's then counsel (Brunson Chandler) wherein Responding Party provided ample case law, statutory authority, and analysis in support of its position that Plaintiffs' conduct, as contemplated by the Agreement unilaterally drafted by Plaintiffs, was tantamount to broker/ dealer activity as defined by the Securities and Exchange Commission and Florida law and thus Responding Party could not perform as to same.

*Id.*

Similarly, Defendants notified Plaintiffs of their intent to proffer expert testimony regarding certain S.E.C. laws, rules and regulations as to whether an individual is considered a broker. (*See* Defs.' Expert Witness Disclosures (ECF No. 40, Ex. A) & Defs.' Am. Expert Disclosures (ECF No. 40, Ex. B).) While Magistrate Judge Sanchez struck Defendants' expert disclosures because they were untimely and sought to introduce purely legal opinions (ECF No. 59), the disclosure is noteworthy here because Defendants did not make any mention of their intent to interject a defense based on S.E.C. Rule 144. (*See* Landau Decl., Ex. A.) As Defendants' counsel correctly noted in opposition to Plaintiffs' Motion to Strike, "Plaintiffs' counsel stated that he had not disclosed an expert because he wanted to 'wait and see what [Defendants] were going to do.'" (Defs.' Opp. to Pls.' Mot. to Strike Defs.' Am. Expert Witness Disclosures & Exclude the Proposed Test. of Dr. Lauren Cohen 4 (ECF No. 41).) Had Defendants properly disclosed their Rule 144 Defense in their Answer, during discovery, or in an

expert disclosure, Plaintiffs could have retained an expert to address the issue and would have developed a record on the issue.

The parties have since fully briefed Defendants' Motion for Summary Judgment, filed a joint pre-trial stipulation, exhibit lists, witness lists and proposed jury instructions. S.E.C. Rule 144 is not cited in any of these filings.

## III. ARGUMENT

### A. Defendants' Motion Should be Denied Because it is Untimely Under the Scheduling Order and Rule 16

Defendants' Motion to Amend the Proposed Jury instructions is a backdoor attempt to assert a new affirmative defense after this Court's May 5, 2023 deadline for amending the pleadings has passed, without asking the Court's permission. The Court should recognize Defendants' Motion for what it is and reject it out of hand.

When a motion to amend is filed after a scheduling order deadline, a party must satisfy the stringent good cause standard of FRCP 16(b) before the Court considers whether to allow the amendment under FRCP 15(a). *See, e.g.*, *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

Likewise, Local Rule 16.1(b)(6) provides that "the parties are required to comply with any pretrial orders by the Court," including orders imposing deadlines. S.D. Fla. L.R. 16.1(b)(6). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's notes); *see also Universal Physician Servs., LLC v. Del Zotto*, 842 F. App'x 350, 355 (11th Cir. 2021) (affirming denial of motion to amend where "defendants never sought

a modification of the scheduling order and never argued that they had good cause for seeking an extension of the deadline."); *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007) (refusing to allow Defendants to add a previously unasserted affirmative defense after deadline for amending pleadings had passed under Rule 16 because defendants failed to demonstrate "good cause").

Here, Defendants do not even attempt to move under Rule 16 to demonstrate good cause; nor could they. The information that gives rise to their Rule 144 Defense was available to Defendants prior to the May 5, 2023 deadline, yet they waited until the eve of trial to attempt to add this defense (without even formally moving to do so)—after the completion of all fact and expert discovery. There is simply no valid excuse for Defendants to add this defense at this late date.[5]

Defendants contend that their Rule 144 Defense is contemplated and encompassed by their 13th Affirmative Defense and, accordingly, will argue that there is no need to amend their Answer. (*See* Defs.' Mem. 3 (claiming that their Rule 144 Defense is the same as their 13th Affirmative Defense).) Not so. Indeed, Mullen's 13th Affirmative Defense is not an affirmative defense at all; rather it's a statement that Plaintiffs cannot state a cause of action because they cannot establish a necessary element of the cause of action—damages. "A defense which points

[5] *Est. of Reed v. Nat'l Specialty Ins. Co.*, No. 19-23178-CIV, 2020 WL 5547922, at *4 (S.D. Fla. July 29, 2020) ("As a matter of law, . . . counsel's negligence is not good cause for failure to comply with the Scheduling Order. . . .") (citations omitted)); *see also id.* ("[A]uthorities are legion for the proposition that attorney inadvertence, carelessness or oversight of a published deadline is insufficient, as a matter of law, to constitute 'good cause' under Rule 16(b)(4)." (alteration in original) (quoting *Rogers v. Hartford Life & Acc. Ins. Co.*, Civil Action 12-0019-WS-B, 2012 WL 2395194 at *2 & n.5 (S.D. Ala. June 22, 2012)).

out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Serv., Inc.,* 846 F.2d 1343, 1349 (11th Cir. 1988).

In contrast, Defendants' new assertion that Plaintiffs' damages are limited by S.E.C. Rule 144 *is* an affirmative defense. "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter." *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. 2011) (internal citation omitted). In determining whether a particular argument is an affirmative defense, courts consider "the logical relationship between the defense and the cause of action," and the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings. *See Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988).[6] The party raising the affirmative defense "must do more than make conclusory allegations." *Wight v. Bluman*, No. 9:20-CV-81688, 2021 WL 2783878, at *2 (S.D. Fla. July 2, 2021) (internal citation omitted). A defendant must give "'fair notice' of 'the defense and the grounds upon which it rests.'" *Burger King Corp. v. Berry*, No. 1:20-CV-21801-UU, 2020 WL 10224201, at *5 (S.D. Fla. Sept. 4, 2020) (internal citation omitted).

Defendants' conclusory allegations in their 13th Affirmative Defense that Plaintiffs could not establish damages *at all,* and therefore could not state a claim, did not put Plaintiffs on notice that Defendants would argue that, assuming Plaintiffs could satisfy all elements of their claim, S.E.C. Rule 144 would impact Plaintiffs' ability to collect the full amount of damages. Because

[6] In *Hassan*, the Eleventh Circuit found that the government had erred in not including an argument about collateral source payments in the pleadings as an affirmative defense. *Hassan*, 842 F.2d at 263. Nevertheless, the Eleventh Circuit did not find that the district court had improperly considered this evidence because, unlike this case, the collateral source payments were extensively addressed during Hassan's deposition and had been specifically addressed in an interrogatory. *Id.* Here, by contrast, the Rule 144 Defense was not identified in discovery.

Plaintiffs were not put on notice of this defense, the issue has not been litigated in this action by Plaintiffs or Defendants. Defendants are not free to ignore the deadline set by the Court to amend their pleadings and they cannot do so now—without even attempting to satisfy their burden under Rule 16—particularly at this late date.

**B. Plaintiffs Would Suffer Extreme Prejudice If Defendants Were Allowed to Introduce this Defense At this Late Date**

Plaintiffs will be prejudiced by the late addition of Defendants' Rule 144 Defense. First, there is no evidence to support this defense, as the record currently stands. Plaintiffs are prejudiced because the Rule 144 Defense was not raised in either Defendants' Answer or their interrogatory responses, which would have put Plaintiffs on notice of the need to build a record refuting the defense during discovery. Thus, Plaintiffs were deprived of the opportunity to eliminate the Rule 144 Defense before trial by moving for summary judgment on the issue. Had Plaintiffs been on notice that Defendants were asserting this defense, they would have done so, since there is no record evidence to support it.

Second, because Defendants never asserted their Rule 144 Defense as an affirmative defense, Plaintiffs never conducted discovery on the issue. *See Antonio Belloso v. Asplundh Tree Expert, Co.*, No. 617CV2020ORL40GJK, 2019 WL 3386473, at *3 (M.D. Fla. May 20, 2019) (report and recommendation adopted sub nom.); *Belloso v. Asplundh Tree Expert, Co.*, No. 617CV2020ORL40GJK, 2019 WL 4385684, at *3 & *5 (M.D. Fla. July 16, 2019) (motion seeking to amend affirmative defenses denied because of the prejudice caused by the inability to conduct discovery on the issue).

Defendants also argue that Plaintiffs are not prejudiced by the proposed new jury instruction regarding its Rule 144 Defense because Defendants made "this very argument" in

their summary judgment brief. (Defs.' Mem. 4 (citing ECF No. 47 at 18 (Defs.' Joint Mot. for Summ. J. & Incorporated Mem. of Law).) This argument misses the mark. Even if Defendants' summary judgment brief did raise the Rule 144 Defense (which it did not), that was too late to prevent Plaintiffs from being prejudiced. Their summary judgment brief was filed after discovery had closed, thereby depriving Plaintiffs from developing a record to refute the defense.

Defendants claim that their proposed new instruction is necessary because "the jury must be properly instructed on the value of the shares allegedly owed to Plaintiffs." (Defs.' Mem. 2.). But during discovery, when Plaintiffs propounded an interrogatory asking Defendants to describe their communications "as to the value of the consideration to which the Plaintiffs were entitled, or to which Plaintiffs claimed or might claim they were entitled, under the Agreement," Defendants offered nothing but a boilerplate argument that Plaintiffs were entitled to no damages because they were brokers. (*See* Landau Decl. (Ex. A at 18).) They did not mention Rule 144, or even hint at their current contention that Rule 144 had the effect of reducing the value of Plaintiffs' claims.

The same is true of expert discovery. The entire focus of Defendants' now struck S.E.C. expert witness disclosures was whether, under S.E.C. laws, rules and regulations, Plaintiffs acted as brokers. (*See* Defs.' Expert Witness Disclosures (ECF No. 40, Ex. A) & Defs.' Am. Expert Disclosures (ECF No. 40, Ex. B).) Defendants never notified Plaintiffs that they also intended to argue that another S.E.C. rule—Rule 144—applied in this case, or that it reduced the amount of Plaintiffs' damages. (*Id.*)

Plaintiffs should not have to refute at trial a defense that was never raised during discovery. Plaintiffs should not face a trial by ambush. *See Nelson v. Freightliner LLC*, No. 5:01-cv-266, 2003 WL 25781423, at *4 (M.D. Fla., April 23, 2003) ("strict adherence to

discovery rules is necessary to prohibit not only trial by ambush, but discovery gaming wherein a party holds back evidence") (quoting *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 311 (M.D.N.C. 2002)); *Goodman-Gable-Gould Co. v. Tiara Condo. Assoc., Inc.*, 595 F.3d 1203, 1213 (11th Cir. 2010) (affirming order excluding at trial evidence of an unpled misrepresentation theory because, among other reasons, the evidence had not been disclosed in discovery); *Incardone v. Royal Carribean Cruises, Ltd.*, No. 16-20924-CIV, 2019 WL 2709810, at *9-*10 (S.D. Fla. June 28, 2019), report and recommendation adopted, No. 16-20924-CIV, 2019 WL 8989849 (S.D. Fla. Oct. 1, 2019) (precluding defendants from offering evidence on a defense and finding inadequate notice of the defense where defendants "argue[d] only (in a conclusory and generic way) that Plaintiffs knew of the facts supporting this defense through discovery, without explaining *which* discovery supposedly provided sufficient facts or what the facts [we]re or how the warnings were given and what they contained").

Defendants may argue for a continuance to allow Plaintiffs to conduct fact and expert discovery on the Rule 144 Defense. However, that would not cure the prejudice for the same reasons Magistrate Judge Sanchez articulated in his order striking Defendants' Expert Report, in which he explained that such a cure "would . . . result in undue delay that would only increase the prejudice to the Plaintiffs" and that such a result was unfair because "the Defendants' have long had notice of the issues surrounding Dr. Cohen's proposed testimony and have had ample opportunity to provide a timely expert report and to take steps to remedy their disclosure violations in a manner that would minimize the prejudice to the Plaintiffs." *TOA Trading LLC v. Mullen Auto., Inc.*, No. 22-21089-CIV, 2023 WL 8476462, at *6 (S.D. Fla. Nov. 27, 2023); *see also Waite v. All Acquisition Corp.*, No. 15-cv-62359, 2016 WL 4433713, at *3 (S.D. Fla. April 28, 2016) (refusing to push back all of the case deadlines to accommodate defendants' late

disclosure of evidence because doing so would permit the defendant "to make an end-run against the language and policy of Federal Rules, which specifically guard against 'trial by ambush'"). The same applies here with equal force. Defendants had ample opportunity to timely assert their Rule 144 Defense, but failed to do so until the eve of trial, when discovery had long ago ended. *See Woolfolk ex rel. Est. of Woolfolk v. Columbia Cnty.*, FL, No. 3:07-CV-137-J-25TEM, 2008 WL 2097666, at *2-*3 (M.D. Fla. May 16, 2008) (motion to amend denied where there was no explanation for undue delay of two years). Plaintiffs would clearly be prejudiced by the interjection of the Rule 144 Defense at this late date.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion must be denied in its entirety.

DATED: April 10, 2024

Respectfully submitted,
*/s/ Manuel J. Dominguez*

Manuel J. Dominguez (Fla. Bar No. 0054798)
COHEN MILSTEIN SELLERS
& TOLL PLLC
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
jdominguez@cohenmilstein.com

Barry Taus
PRO HAC VICE
Kevin Landau
PRO HAC VICE
TAUS, CEBULASH & LANDAU, LLP
123 William Street, Suite 1900A
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
btaus@tcllaw.com
klandau@tcllaw.com