UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-21089-CV-WILLIAMS

TOA TRADING LLC, *et al.*,

    Plaintiffs,

v.

MULLEN AUTOMOTIVE, INC., *et al.*,

    Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendants Mullen Automotive, Inc. and Mullen Technologies, Inc.'s Joint Motion for Summary Judgment ("***Motion***") (DE 47). Plaintiffs TOA Trading LLC and MunshiBari LLC filed a response (DE 49), and Defendants filed a reply (DE 57). Upon review of the Motion, the Parties' briefing, the record, and the applicable law, Defendants' Motion for Summary Judgment is **DENIED**.

    **I.**    **FACTUAL BACKGROUND**

Plaintiffs TOA Trading LLC ("***TOA***") and MunshiBari LLC ("***MunshiBari***" or, together with TOA, "***Plaintiffs***") filed a complaint against Defendants Mullen Automotive, Inc. ("***Mullen Automotive***") and Mullen Technologies, Inc. ("***Mullen Technologies***" or, together with Mullen Automotive, "***Defendants***")[1] on April 8, 2022, alleging breach of contract or, alternatively, unjust enrichment. (DE 1.)

The following facts are taken from the statements of material facts ("***SOMF***") and

---

[1] Mullen Technologies merged with Net Element, Inc. ("***NETE***") and the companies, together, became Mullen Automotive. (DE 1 at 6; DE 11 at 3.)

replies submitted by Defendants and Plaintiffs. (DE 46; DE 50; DE 56.)[2] The key individuals relevant to this action are: Dayan Martinez ("**Mr. Martinez**"), who owns TOA; Dr. Shaheen Ahmad ("**Dr. Ahmad**"), who owns MunshiBari; Oleg Firer ("**Mr. Firer**"), the CEO of NETE; and David Michery ("**Mr. Michery**"), the CEO of Defendants. (DE 46 at 1–2; DE 50 at 11.) In May 2020, Mr. Martinez was working as an independent consultant for NETE when Mr. Firer asked if Mr. Martinez knew of any electronic vehicle or telemedicine companies that would be interested in a merger with NETE. (DE 50 at 11.) Mr. Martinez reached out to a friend, who suggested that Mr. Martinez speak with Dr. Ahmad. (*Id.*) When Mr. Martinez and Dr. Ahmad connected by phone, Dr. Ahmad suggested Mullen Technologies as a potential match for the merger. (*Id.*) Dr. Ahmad then reached out to Mr. Michery, who he had previously spoken with regarding electric car technology. (*Id.*) Mr. Michery indicated interest and the Mullen Technologies CFO sent Dr. Ahmad a profit and loss statement, a balance sheet, and a company overview. (*Id.*) Dr. Ahmad forwarded the email with the attached Mullen Technologies materials to Mr. Martinez, who then shared the materials with Mr. Firer. (DE 50 at 12) On May 30, 2020, Mr. Martinez, Dr. Ahmad, Mr. Firer, and Mr. Michery participated in a phone call where Mr. Firer and Mr. Michery were introduced. (*Id.*) Plaintiffs contend that this phone call was the extent of their involvement in facilitating the transaction between Mullen Technologies and NETE.

---

[2] The Court notes significant deficiencies in the factual record presented in support of the Motion. Defendants elected to submit only excerpts of the deposition testimony, rendering the testimony nearly impossible to follow. (DE 45-1; DE 45-13; DE 45-16.) Furthermore, in Defendants' Reply to Plaintiffs' Opposition to the Statement of Material Facts (DE 56), Defendants devote over seven pages to attacking Plaintiffs' Opposition rather than simply replying to Plaintiffs' additional material facts, as required by Local Rule 56.1(b)(3). Defendants then dispute most of Plaintiffs' additional facts on the basis that the "the statements contained therein are not 'material facts.'" (DE 56 at 8–11.) Such vague assertions, without evidentiary citations, violate Local Rule 56.1.

(*Id.*) Defendants dispute this contention. (DE 56 at 9.)

On June 12, 2020, Mr. Firer, Mr. Martinez, and Mr. Michery had a phone call where Mr. Firer discussed having Defendants take responsibility for paying a finder's fee to Plaintiffs. (DE 46 at 5–6; DE 50 at 13.) That same day, Mr. Martinez and Mr. Michery signed the Finder's Fee Agreement ("**Agreement**") at issue in this action. (DE 1-1.) In the Agreement, Mullen Technologies agreed to pay TOA and MunshiBari a fee should Mullen Technologies "enter[] into a merger, reverse triangular merger or sale transaction with Net Element, Inc. ("NETE") to acquire all or a portion of the stock and/or all or a portion of the assets of Mullen [Technologies]." (*Id.*) In November 2021, the merger between Mullen Technologies and NETE closed. (DE 51-5.) Plaintiffs were never paid the finder's fee as required by the Agreement, and this action ensued. (DE 1.)

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[O]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Any such dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment carries the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the

nonmoving party's case." *Feinman v. Target Corp.*, 2012 WL 6061745, at *3 (S.D. Fla. Dec. 6, 2012) (citing *Celotex*, 477 U.S. at 325).

Once the movant satisfies their burden, the burden of production shifts to the nonmoving party, which must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The inquiry at this stage by a district court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Lake v. Nationwide Mut. Ins. Co.*, 2021 WL 2188488, at *4 (N.D. Ala. Feb. 5, 2021) (quoting *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998)).

### III.   DISCUSSION

#### A. Count I: Breach of Contract

Defendants argue that summary judgment on Plaintiffs' breach of contract claim is warranted because the Agreement is illegal under state and federal securities law and violates public policy. Alternatively, Defendants argue that even if the Agreement were legal and enforceable, the terms are so indefinite that it must be found void as a matter of law.

### 1. A genuine dispute of material fact exists as to whether the Finder's Fee Agreement is valid under federal law.

Under section 15(a) of the Securities and Exchange Act ("**Exchange Act**"), it is unlawful for any broker or dealer not registered with the U.S. Securities and Exchange Commission ("**SEC**") to effect or attempt to induce any transactions in securities. 15 U.S.C. § 78o(a)(1). The Exchange Act defines a broker as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Section 29(b) of the Exchange Act further provides that "[e]very contract made in violation of any provision of [the Act] . . . and every contract . . . the performance of which involves a violation of [the Act] . . . shall be void . . . ." 15 U.S.C. § 78cc(b). It is undisputed that Plaintiffs were not registered with the SEC at any time relevant to this action and so Defendants argue that Plaintiffs impermissibly engaged in broker activities in connection with the merger between Mullen Technologies and NETE. In response, Plaintiffs contend that their role in the merger was merely that of finders, not brokers. Therefore, whether the Agreement is legal and enforceable under federal law turns on whether Plaintiffs acted as brokers or finders during their interactions with Defendants.

In the absence of clear statutory language defining what constitutes effecting a transaction or engaging in the business of doing so, federal courts across the country often rely on factors set forth in *SEC v. Hansen*, No. 83 CIV. 3692, 1984 WL 2413 (S.D.N.Y. Apr. 6, 1984). *See S.E.C. v. Kramer*, 778 F. Supp. 2d 1320 (M.D. Fla. 2011) (citing *Hansen*). A *Hansen* inquiry into whether an individual acted as a broker within the meaning of the Exchange Act involves examining the following:

> whether th[e] person 1) is an employee of the issuer; 2) received commissions as opposed to a salary; 3) is selling, or previously sold, the

> securities of other issuers; 4) is involved in negotiations between the issuer and the investor; 5) makes valuations as to the merits of the investment or gives advice; and 6) is an active rather than passive finder of investors.

*Hansen*, 1984 WL 2413, at *10. No single *Hansen* factor is dispositive and courts across the country have found a 'finder's exception,' which permits individuals to "perform a narrow scope of activities without triggering the broker/dealer registration requirements." *Kramer*, 778 F. Supp. 2d at 1336 (citing *Salamon v. Teleplus Enterprises, Inc.*, 2008 WL 2277094 (D.N.J. 2008)) (collecting cases).

Although Defendants contend that Plaintiffs engaged in every activity described in *Hansen*, nearly all the material facts they cite in support of their argument are disputed by Plaintiffs and many are unsupported by the factual record before the Court. For example, Defendants state that Mr. Martinez testified that NETE asked him to find potential investors and report back on the valuation of the same. In support of this contention, Defendants cite to paragraphs six and fifteen of the SOMF filed concurrently with their Motion. However, a review of the SOMF shows that paragraph six states only that Mr. Martinez was an 'Investment Relations' advisor for NETE and paragraph fifteen includes no mention of Mr. Martinez at all. (DE 46 at 2–3.) Furthermore, a review of the deposition testimony referenced in paragraph six makes no mention of Mr. Martinez searching for potential investors or assessing their valuation. In fact, the testimony Defendants cite appears to show that Mr. Martinez's work largely involved press releases communicating company updates to shareholders—people who were already investors in NETE. (DE 45-1 29:2–30:3, 32:1–33:4.) Similarly, Defendants state that Mr. Martinez served as a FINRA regulated broker for over fifteen years, but Plaintiffs contend that Mr. Martinez was a financial advisor, not a broker, and Mr. Martinez testified that he

was "not a broker" and had "never been a broker." (DE 50 at 2–3, DE 51-1 138:12–13.)

While it is undisputed that Plaintiffs sought a commission-based compensation via the Agreement, "commission-based payment, standing alone, is not dispositive of whether a party acts as a broker-dealer under the Exchange Act." *Quantum Cap., LLC v. Banco de los Trabajadores*, No. 1:14-CV-23193-UU, 2016 WL 10536988, at *7 (S.D. Fla. Sept. 8, 2016). A court "[can]not weigh conflicting evidence or determine the credibility of witnesses" at the summary judgment stage and the Court declines to do so here. *A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018). Given the significant disputes over the degree of involvement Plaintiffs had in the merger between Mullen Technologies and NETE, Defendants' argument that the Agreement is illegal under federal law fails.

**2. A genuine issue of material facts exists as to whether Plaintiffs were exempt from registration requirements under Florida law.**

The Court next examines Defendants' argument that the Agreement violates Florida law. As an initial matter, Defendants cite to Florida Statute section 475.01(1)(a) for an expansive definition of a broker, arguing that Plaintiffs' conduct as 'business brokers' falls within the ambit of the statute. In response, Plaintiffs argue that section 475.01 is inapplicable because the statute was enacted to regulate the behavior of real estate brokers. The Court recognizes that Florida state courts often extend the provisions of Chapter 475 to include 'business brokers.' *Meteor Motors, Inc. v. Thompson Halbach & Assocs.*, 914 So. 2d 479, 481 (Fla. Dist. Ct. App. 2005). However, federal courts have declined to apply Chapter 475 where defendants are not "members of a class which the licensing statute was designed to protect." *Mod. Realty of Missouri,*

*Inc. v. Shivers & Assocs., Inc.*, 705 F. Supp. 556, 560 (S.D. Fla. 1989) (collecting cases).

In cases where a party seeks to invalidate an agreement based on the Chapter 475 registration requirement, federal courts find that a formalistic application of Chapter 475 would yield "an odd result as it would frustrate the parties' clear intent . . . to be bound by the terms" of the agreement. *Ledecky v. Source Interlink Companies, Inc.*, No. CIV.A. 05-1039 (JGP), 2007 WL 396997, at *6 (D.D.C. Feb. 1, 2007); *see also Shochet Sec., Inc. v. First Union Corp.*, 663 F. Supp. 1035 (S.D. Fla. 1987) (holding that application of Chapter 475 in a securities action would violate the Florida Constitution). As Defendants in this action are not part of "the public . . . being forced to deal with dishonest or unscrupulous real estate operators," the Court declines to apply the Chapter 475 definition of a broker here. *Mod. Realty of Missouri, Inc.*, 705 F. Supp. at 560.

Defendants next argue that the Agreement violates Florida Statute section 517.12. In Florida, securities are regulated under the Florida Securities and Investor Protection Act. Fla. Stat. §§ 517.01–517.63. Section 517.12 requires individuals engaged in broker/dealer activities to be registered with the Florida Division of Securities. Fla. Stat. § 517.12(1). A dealer is one who "engages, for all or part of [his] time, directly or indirectly, as agent or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." Fla. Stat. § 517.021(8). As with federal securities regulations, "[w]here a contract calls for an unregistered broker to act in such a capacity in violation of [s]ection 517.12, the contract is void and confers no enforceable rights on the contracting parties." *Quantum Cap., LLC v. Banco de los Trabajadores*, No. 1:14-CV-23193-UU, 2015 WL 12259226, at *13 (S.D. Fla. Dec. 22, 2015) (citing *Umbel v. Foodtrader.com, Inc.*, 820 So. 2d 372, 374 (Fla. Dist. Ct. App.

2002)).

Plaintiffs argue that two statutory exemptions to the registration requirements in section 517.12 apply here. First, section 517.061(8) exempts individuals involved in "[t]he sale of securities from one corporation to another corporation provided that: (a) The sale price of the securities is $50,000 or more; and (b) The buyer and seller corporations each have assets of $500,000 or more." Fla. Stat. § 517.061(8). Plaintiffs contend—and Defendants do not dispute—that the NETE-Mullen Technologies merger involved securities valued at more than $50,000 and that both companies had assets exceeding $500,000. Second, section 517.061(9) exempts individuals involved in

> [t]he offer or sale of securities from one corporation to another corporation, or to security holders thereof, pursuant to a vote or consent of such security holders as may be provided by the articles of incorporation and the applicable corporate statutes in connection with mergers, share exchanges, consolidations, or sale of corporate assets.

Fla. Stat. § 517.061(9). Again, Plaintiffs contend, and Defendants do not dispute, that the NETE-Mullen Technologies merger was a transaction that involved the sale of securities between NETE and Mullen, pursuant to a vote or consent of security holders in connection with a merger. Accordingly, the Court finds that a genuine issue of material fact exists as to whether Plaintiffs were exempt from the registration requirements of section 517.12 and Defendants' argument that the Agreement is illegal under state law fails.

### 3. The record does not support a finding that the Finder's Fee Agreement violates public policy.

Defendants next argue that the Agreement is void as a matter of public policy because Plaintiffs acted as unregistered broker/dealers. The Supreme Court of Florida

has held that courts "should refuse to strike down contracts involving private relationships [as contrary to public policy], unless it be made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract between parties sui juris." *City of Largo v. AHF-Bay Fund, LLC*, 215 So. 3d 10, 16 (Fla. 2017). At this juncture, the Court finds that a genuine dispute of material fact exists as to whether the Agreement runs afoul of state or federal law. As such, there is no basis for the Court to find the Agreement void as a matter of public policy.

### 4. Defendants' indefiniteness argument fails.

Defendants argue, in the alternative, that if the Agreement does not violate federal and state securities law registration requirements, the terms are so indefinite that the Agreement must be found void as a matter of law. The Supreme Court of Florida has cautioned that "courts should be extremely hesitant in holding a contract void for indefiniteness, particularly where one party has performed under the contract and allowed the other party to obtain the benefit of his performance." *Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974). The Court reviews each of Defendants' arguments in turn.

#### i. Defendants fail to demonstrate that the Finder's Fee Agreement lacked mutual assent.

First, Defendants argue that the Agreement lacked mutual assent because Mr. Michery had no opportunity to negotiate the terms of the contract and feared the merger would not go through if he did not sign the Agreement. In their reply, Defendants state that any coercion argument related to the Agreement is "nonexistent," so the Court need

not address the issue of duress. Florida courts have held that "[m]utual assent does not mean that two minds must agree on one intention; rather, the formation of a contract depends on the parties having said the same thing, not on their having meant the same thing." *Knowling v. Manavoglu*, 73 So. 3d 301, 303 (Fla. Dist. Ct. App. 2011). More concretely, "acceptance must contain an assent to the same matters contained in the offer." *Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. Dist. Ct. App. 2001). Here, it is undisputed that Mr. Martinez and Mr. Michery signed the exact same version of the Agreement, which laid out both Parties' obligations. Defendants do not put forth any arguments that Plaintiffs changed the terms of the Agreement between offer and acceptance. Accordingly, the Court finds that Defendants' mutual assent argument fails.

### ii. The terms of the Finder's Fee Agreement are unambiguous.

Defendants next argue that the material terms are amorphous because the type of stock owed to Plaintiffs is not clarified in the Agreement. The Agreement reads in relevant part: ". . .a fee shall be paid by Mullen to Finder in the stock of the surviving publicly trading entity at closing. The fee will be calculated as follows: Of total purchase price consideration: the sum of 3% to be paid at closing . . ." (DE 1-1.) Defendants argue that they have "no information" regarding how to calculate three percent of total purchase price consideration. The Court disagrees.

Florida courts abide by the "principle of contract interpretation which requires that the words used by the parties must be given their plain and ordinary meaning."[3] *Beans*

---

[3] Defendants argue that the contracting parties' intent should control contract construction and interpretation, citing *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1251 (S.D. Fla. 2017). However, the Court in *Hirsch* held that "contract interpretation begins with the plain meaning of words used." *Id.* Then, the Court "should strive to give effect to the intent of the parties in accord with reason and probability as gleaned from the whole agreement. . . ." *Id.* As the plain meaning of the terms in the

*v. Chohonis*, 740 So. 2d 65, 67 (Fla. Dist. Ct. App. 1999). Based on a plain reading of the fee clause, the Court finds nothing in the terms to be so ambiguous to warrant rendering the Agreement void. The Court reviews each portion of the clause in turn.

The Agreement states that the fee is to be paid by Defendants to Plaintiffs "in the stock of the surviving publicly trading entity." As Mullen Automotive is the surviving publicly traded company following the merger between Mullen Technologies and NETE, an ordinary reading of the Agreement leads to the conclusion that Defendants are to pay Plaintiffs in Mullen Automotive stock.

Defendants next question the type of stock owed to Plaintiffs. The letter of intent, agreed upon by Mullen Technologies and NETE on the same day Mr. Martinez and Mr. Michery signed the Agreement, states that the purchase price for the transaction would be "satisfied through issuance of . . . common stock." (DE 51-4 at 2.) It is therefore reasonable to understand the Agreement to also contemplate common stock. This clarification of purchase price consideration also supports a reading of the Agreement that the three percent of the total purchase price refers to the total number of shares exchanged between Mullen Technologies and NETE to effectuate the transaction. Finally, the Agreement is clear that the fee is to be paid "at closing." (DE 1-1.) As the entire Agreement is contingent on a merger between Mullen Technologies and NETE, it is reasonably understood that the Agreement contemplates payment at the time the merger closes.

---

Agreement is clear, the Court need not inquire about intent. Furthermore, Defendants have advanced no arguments as to what Mr. Michery's intent was at the time of signing. The Court therefore finds that a plain and ordinary reading of the text of the Agreement is sufficient. In fact, the only record evidence demonstrates that, at the time of signing, Mr. Michery intended to pay the fee. (DE 51-2 89:13–18.)

> ### *iii. Defendants' argument that calculating damages in this action is impossible is unavailing.*

Defendants argue that calculating damages in this action is impossible and that Plaintiffs have failed to put forth an expert witness to establish damages. Under Florida's "certainty rule, which applies in both contract and tort actions, recovery is denied where the fact of damages and the extent of damages cannot be established within a reasonable degree of certainty." *Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 27–28 (Fla. Dist. Ct. App. 1990). Nonetheless, Florida courts have held that "uncertainty as to the precise amount of, or difficulty in proving, damages does not preclude recovery if there is some reasonable basis in the evidence for the amount awarded." *Clearwater Assocs. v. Hicks Laundry Equip. Corp.*, 433 So. 2d 7, 8 (Fla. Dist. Ct. App. 1983).

In response, Plaintiffs put forth a simple mathematical calculation to assess the damages in this action: three percent of the total number of publicly traded shares of stock exchanged by Mullen Technologies and NETE multiplied by the stock price at the time of closing. In reply, Defendants contend that an expert opinion on damages is necessary because calculation in this action would require scientific, technical, or other specialized knowledge, referencing 'temporal limitations on stock sales' and 'SEC regulations governing the valuation, restriction, and sale of stock pursuant to a spinoff merger.' However, as Defendants fail to argue with any specificity why such concepts would be applicable here or why Plaintiffs' proposed arithmetic calculation is insufficient, the Court finds these arguments unavailing. *See Kleiman v. Wright*, No. 18-CV-80176, 2021 WL 5447110, at *3 (S.D. Fla. Nov. 22, 2021) ("[T]he amount of Bitcoin and its market price provide an adequate basis for the jury to calculate damages.")

B. **Count II: Unjust Enrichment**

Defendants argue[4] that summary judgment on Plaintiffs' unjust enrichment claim is warranted because Plaintiffs failed to allege damages for unjust enrichment distinct from the damages resulting from the alleged breach of contract. However, "unjust enrichment and breach of contract may be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid." *Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1344 (S.D. Fla. 2020). Here, where Defendants continue to argue that the Agreement is illegal and unenforceable, summary judgment on Plaintiffs' unjust enrichment claim would be improper. Should Plaintiffs prevail at trial, they "must choose recovery under one theory after a verdict in its favor has been entered." *Abdullatif Jameel Hosp. v. Integrity Life Scis., LLC*, No. 8:15-CV-2160-MSS-JSS, 2016 WL 9526457, at *3 (M.D. Fla. Sept. 23, 2016).

C. **Counterclaim: Declaratory Relief**

Defendants move for summary judgment on their claim for declaratory relief, requesting that the Court declare the Agreement to be unlawful and excuse Defendants from performance under the terms of the contract. As a genuine dispute of material fact exists as to whether the contract is lawful and enforceable, *see* discussion *supra* Sections III.A.1, III.A.2, summary judgment on Defendant's counterclaim for declaratory relief is denied.

---

[4] Defendants also argue that they are entitled to summary judgment on Plaintiffs' unjust enrichment claim because Plaintiffs failed to plead the unjust enrichment claim in the alternative to the breach of contract claim. However, the first paragraph of Plaintiffs' Complaint states that "Plaintiffs . . . bring this action against Defendants . . . for breach of contract or, *alternatively*, unjust enrichment." (DE 1.) (emphasis added).

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (DE 47) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>24th</u> day of April, 2024.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE